CASE 32—PETITION EQUITY—SEPTEMBER 14.

## Price's Adm'r v. Thompson, &c.

APPEAL FROM BARREN CIRCUIT COURT.

1. A TRUSTEE CAN NOT PURCHASE AT A PUBLIC SALE where the trust estate is interested in having the property bring its highest price; and this rule applies not only to trustees proper, but to all persons invested with fiducial power. In such cases the presumption of

Price's Adm'r v. Thompson, &c.

invalidity is conclusive, and the transaction *always* voidable, unlike that class of cases where the trustee and the beneficiary intentionally deal with each other, each knowingly taking a part in the transaction, the presumption of invalidity in such cases being rebuttable.

*Where a commissioner of court has become the purchaser at a sale under an execution* in his favor as commissioner, the sale will be set aside at the suit of the party in interest, if the purchaser was still acting as commissioner in the case at the time of his purchase, and for that reason interested in having the property bring the highest price.

2. NEW TRIAL—NEGLECT OF COMMISSIONER.—Where a party files with a commissioner of court his vouchers, properly proved, entitling him to certain credits in the settlement of accounts referred to the commissioner by the court, he has the right to presume that the commissioner will do his duty and report the claims, and if the commissioner fails to do so, and judgment is rendered against the party filing the claims, without reference to the credits to which he is entitled, the court will grant him a new trial if he had no notice before judgment of the commissioner's neglect of duty. .

W. P. D. BUSH AND FINLAY F. BUSH FOR APPELLANT.

1. The loss or disappearance of the vouchers filed with the commissioner was a "surprise on a material point," which, taken in connection with the other facts of the case, was sufficient to entitle appellant to a new trial. (Hughes v. McGee, 1 Mar., 29; McCall v. Hitchcock, 9 Bush, 66; Ewing v. Price, 3 J. J. Mar., 523.)

2. A trustee can not be allowed to purchase property at a judicial sale if the trust estate is interested in having the property bring the highest price; and this rule applies to a commissioner of court. The sale in this case should, therefore, be set aside. (Kerr on Fraud, page 160.)

BOLES, NUCKOLS & GORIN, OF COUNSEL, ON SAME SIDE.

W. L. PORTER FOR APPELLEES.

1. The sale can not be set aside, as there is no question raised as to the jurisdiction of the court, nor any irregularity charged in making the sale.

2. If appellant saw proper to neglect the suit and failed to attend and have the proper credits allowed him without any cause or excuse for it, he is now without remedy.

JUDGE BENNETT DELIVERED THE OPINION OF THE COURT.

The appellant filed his petition in the Barren Circuit Court against the appellees, Buford M. Thomp-

son and T. M. Dickey, the Master Commissioner of the Barren Circuit Court, and others. In his petition he alleges that appellee, Thompson, filed his petition in the Barren Circuit Court against him as the administrator of Joseph Price, deceased, for the purpose of having the decedent's estate settled, and the sale of land to pay debts, etc.

That appellee, T. M. Dickey, to whom the case was referred as the Master Commissioner of the court, reported that appellant was indebted to said estate as administrator in the sum of two hundred and ninety-five dollars and fifty-nine cents; that said report was confirmed without objection, and appellant was ordered to pay said sum to the commissioner, and in default of which execution was ordered to issue. No payment having been made, execution issued in the name of the commissioner, and by his direction, against appellant, which was levied on a tract of land containing ninety-nine acres belonging to appellant. That said land was sold at execution sale for the sum of two hundred and fifty dollars, which was less than two-thirds of its appraised value.

The appepee, Dickey, purchased it. Afterward, a second execution was issued and levied on the equity of redemption in said land. He alleged that he had paid off and discharged various just claims and demands against the estate of his decedent, exceeding in amount the sum of two hundred and ninety-five dollars and fifty-six cents; that he gave the receipts and vouchers evidencing these payments to his attorney to file with the commissioner; that said receipts and vouchers had been lost, either by his attorney

or by the commissioner, after they had been given him; that he was not present when the commissioner's report was made, or when it was confirmed, or when the order was made directing him to pay said sum to the commissioner, nor did he know that such orders were made, or that his receipts and vouchers were lost until after execution had issued against him.

He prayed the court to set aside the report of the commissioner, the order and judgment directing him to pay said sum to the commissioner, the sale of his land, and grant him a new trial, etc. The court granted him an injunction until further orders, but on final trial dissolved the injunction and dismissed his petition. From that judgment he appeals to this court.

The appellee, Dickey, made a joint answer with the other defendants. They do not deny that appellant did not know that the commissioner had reported an indebtedness against him of two hundred and ninety-five dollars and fifty-six cents, and that the court had confirmed the report, and ordered him to pay the money to the commissioner, or that his receipts and vouchers had been lost until after execution had been issued against him. Besides, he swears in his deposition to the same thing. The evidence, therefore, as to that matter is conclusive.

The allegation of the petition is, that the receipts and vouchers were placed in the hands of the attorney, "to file with the commissioner in making said settlement, and they were either lost by said Boles, the attorney, or by said commissioner, after they were given to him."

The answer in reference to that allegation is: "They have no knowledge or information sufficient to form a belief as to whether they were placed in the hands of said Boles to be filed with the commissioner." So the answer does not deny that said receipts and vouchers were filed with the commissioner, or that "they had been lost by the commissioner after they had been given to him." The commissioner certainly knew whether such was the fact or not, and his silence is conclusive against him. Besides, the attorney, Boles, swears:

"I placed them, as I now believe, and after the judgment in the cause was rendered, then believed, in the hands of T. M. Dickey, Master Commissioner of the Barren Circuit Court. If I did not so place them I lost them; but they were all put together in a paper and handed to Dickey. And I find a part of them allowed, and the others not, and as they were not disallowed or rejected, I took it Mr. Dickey mislaid them."

Appellant swears that he did pay said claims against the estate which were properly verified and proved. Mr. Boles also swears that said claims were properly verified and proved. No witness contradicts them, nor did appellees offer any evidence at all.

So it may be regarded as conclusively proven:

1. That appellant had paid and discharged said debt.

2. That he had placed the receipts and vouchers evidencing the payment in the hands of his attorney to be filed with the commissioner.

3. That they were placed in the hands of the commissioner, and were lost or mislaid, so that they were

not allowed by him in his settlement, and by reason thereof judgment was obtained against appellant on a demand which he had already paid.

We understand the general rules of law governing applications for new trials upon the ground of newly discovered evidence to be:

1. That "the names of the witnesses who have been discovered" must appear.

2. That the appellant has been vigilant in preparing his case for trial.

3. That the new facts were discovered after the trial, and would be important.

4. That the evidence discovered will tend to prove facts which were not directly in issue on the trial or were not then known, nor investigated by the proof.

5. That the new evidence is not merely cumulative.

Here the evidence was not newly-discovered, but was known to appellant before the trial, and had been prepared by him to be used on the trial, and judging from the record, had it been used on the trial, the issue would certainly have been decided for the appellant.

So the question now is, was the appellant vigilant in preparing his case for trial. Ordinarily, we would say not. Had the trial of the case been before a jury or before the court by depositions, it would have been his duty to see that his witnesses were duly subpœnaed to attend court to testify, or that their depositions were duly taken; nor would it be reckoned proper vigilance to leave these matters in the hands of his attorney to attend to, for the attorney is but his agent, and his want of proper vigilance is also that of the principal.

But a different case is presented here. The commissioner is the officer of the court—"the hand of the court"—whose duty it is in such cases to receive all vouchers presented to him and preserve them, and if properly proven, to allow and report them to court. This being his official duty, and the presumption being that he will discharge his duty, it can not be said that after a person has filed his vouchers with him, properly proven, that it is his duty to keep a watch over him, as in the case of a private person, to see that he discharges that duty by reporting the claims to be allowed by the court. Had appellant's attorney, with whom he intrusted these vouchers to be delivered to the commissioner, failed to deliver them, then it could be truly said that he was wanting in proper vigilance, for in that case his attorney's negligence would be his negligence. But his attorney having delivered the vouchers to the officer of the court—the hand of the court in such matters—properly proven as vouchers, that was all that was necessary under the circumstances. That officer having lost them, and appellant not being apprised of it until after judgment and execution had been obtained against him, he should have had a new trial and the injunction sustained, and the report of the commissioner charging him with two hundred and ninety-five dollars and fifty-six cents set aside, and the order directing the payment of it to the commissioner set aside.

Appellant also asks that the sale of his land under said execution be set aside. It is contended that this should not be done, for the reason that the

reversal of an erroneous (not void) judgment does not and can not set aside the sale of property made thereunder. That is no doubt the general rule.

But in this case the return of the officer who made the sale shows that the appellee, T. M. Dickey, the Master Commissioner, to whom the case was referred, was the purchaser of the property at the execution sale.

It is also alleged in the petition that he was the purchaser at that sale. The answer says that the return of the officer in that regard was a mistake—that he was not the purchaser; but he offers no proof as to that matter, and the return of the officer being presumptively correct, the commissioner must be regarded as the purchaser. So the question arises, Was his purchase valid? Had he been free from a fiducial character, there can be no doubt that his purchase would have been valid.

But standing in a fiducial relation to decedent's estate, equity devolved upon him the duty to protect the interest of that estate. In such cases the fiduciary can not avail himself of the influence which his position gives for the purposes of his own gain or benefit, to the prejudice or injury of those interests which it is his duty to protect. It is a rule of equity that no man can acquire an interest where he has a duty to perform inconsistent with that interest.

The rule which prevents a person standing in a fiducial relation from acquiring an interest which is inconsistent with those fiducial duties stands mainly upon motives of general public policy. Nor can a man, standing in such relation with respect to prop--

erty, be allowed to purchase the property at a judicial or execution sale, unless the entire responsibility of obtaining the highest price has been removed or taken out of his hands. If he continues under the duty of seeing the property bring its highest price, he is incapacitated from purchasing. These principles apply not only to trustees proper, but to all persons invested with fiducial power, such as executors, administrators, assignees of a bankrupt, commissioners of bankrupts, sheriffs and fiducial officers in general. (Kerr on Fraud and Mistake, pages 150, 160; Stapp v. Toler, 3 Bibb, 450.)

While the same general principle governs all persons occupying a fiducial character, yet there are two classes of cases controlled by "different special rules."

The first class includes all those instances in which the fiduciary, and those with whom he stands in that relation, consciously and intentionally deal with each other, each knowingly taking a part in the transaction from which results a contract or conveyance. Here the contract is not necessarily voidable; it may be valid; but a presumption of its invalidity arises, and that so strong that nothing short of clear evidence of good faith, of full knowledge, of adequate consideration, and of independent thought, consent and action, can overcome it.

The second class is where the fiduciary, acting with reference to his trust, deals with himself in his private or invidual character, as where an agent to sell sells the property to himself, or a sheriff buys the property at his own sale. Such transac-

tions are always voidable at the suit of the party concerned. They are not merely presumptively invalid, as in the first class, where good faith, full knowledge, adequate consideration, independent thought, consent and action may be proved, because the sale or purchase, if made privately, is not known; or if made publicly, by coercive authority can not be controlled; therefore, the good faith, full knowledge, etc., do not control. For these reasons the presumption of invalidity in the first class is rebuttable, and the presumption of invalidity in the second class is conclusive. (Pomeroy's Equity Jurisprudence, vol. 3, sections 956, 957.)

These rules being sound and so well sustained by authority, this court does not hesitate to adopt them for the government of all persons occupying a fiduciary character, whether of a private or a public nature.

Officers whose powers are not merely persuasive, but coercive, *ex parte* and arbitrary, should be held to strict impartiality, fidelity and integrity in the discharge of their trusts. All temptation to make private gain, to take unfair advantage, directly or indirectly, should be removed. The most effective way to do so is to declare all such transactions conclusively invalid.

The Master Commissioner, Dickey, was still acting as commissioner in the case at the time he purchased the land at execution sale. It was to the interest of the estate that the land should bring its full value. It was his duty to encourage its bringing its full value. Therefore, for him to become a

bidder for it at the sale antagonized his private interest with his fiducial duty. This he had no right to do.

For these reasons the injunction should have been sustained, a new trial granted, the report of the commissioner allowing the two hundred and ninety-five dollars and fifty-six cents and the order of the court directing its payment, set aside, and the sale of said land set aside, and appellant allowed credit for any sums proved to have been paid by him for said estate not otherwise allowed.

Wherefore, the judgment of the lower court is reversed, and cause remanded for further proceedings consistent with this opinion.

Judge Lewis not sitting.