## Clay, et al. v. Thomas, et al.

(Decided December 4, 1917.)

Appeal from Clark Circuit Court.

1. Trusts—Sale of Trust Property—Cestui Que Trust.—A trustee having the power to sell the trust property cannot buy it from

himself unless the cestui que trust is sui juris and it clearly appears from the evidence that the trustee acted in good faith, that the consideration was adequate, and that the cestui que trust consented to the sale with full knowledge of all material facts and consciously and intentionally acted upon his independent thought, uninfluenced by any fact either stated or withheld by the trustee, and unless such facts appear the purchase by the trustee is always subject to be avoided by the cestui que trust, and this is so in every case where the latter is not sui juris.

2. Trusts—Cestui Que Trust.—The remedy of the cestui que trust in such a case is either to treat the property in the hands of the trustee as still being held by him in trust, or if he has sold it to adopt the sale and seek an accounting from the trustee of the profits which he realized from his sale of the property after he had purchased it.

3. Trusts—Sale of Trust Property.—A court has no authority in a suit brought for that purpose only to adopt or approve of a private sale of the trust property by the trustee as such to himself individually, although the sale was consented to by the cestui que trust, and especially is such authority wanting where the cestui que trust is an infant and the proceedings to obtain a judgment of approval are ex parte, the infant being made a party thereto by his guardian or next friend joining in the ex parte proceeding and also making the infants petitioners therein, and a judgment so rendered is void and wholly ineffectual to give validity to the trustee's purchase.

4. Trusts—Cestui Que Trust—Accounting.—Trustees under a will were empowered to sell the trust property, but not sooner than three years after the testator's death, nor longer than ten years thereafter. Within a little over three years after that event, with the consent of a cestui que trust having only a life interest in the trust property, they bought it themselves and within less than three years thereafter sold it for more than two and one-half times the amount they gave for it: Held that the cestui ques trust were entitled to an accounting as against the trustees in a suit brought for that purpose of the profits which the trustees realized.

ROBERT B. FRANKLIN, ROBERT C. TALBOTT, DENNIS DUNDON and C. C. WILLIAMS for appellants.

B. R. JOUETT, PENDLETON & BUSH and E. S. JOUETT for appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

The question involved on this appeal is the effect of a sale of trust property by a trustee, under a will with the power of sale, to himself individually. It arises in this way: James M. Thomas died testate, a resident of Clark

county, Kentucky, on June 15, 1905, and on the 24th day of the same month his will was probated before the county court of that county. The testator left surviving him two daughters, Mrs. Thomas E. Moore, and Mrs. Mary T. Ireland, and two sons, William R. Thomas and Robert L. Thomas, and Richard P. Thomas, an infant, the only surviving child of a deceased son of the testator.

Many devises and directions are made in the will which have nothing to do with the questions involved in this case. By the will he appointed his two sons, William R. and Robert L. Thomas, and his son-in-law, Thomas E. Moore, executors thereof, and made the three trustees for his two daughters and his grandson. He owned at the time of his death a saw mill and mill site and appurtenances located at Livingston, Rockcastle county, Kentucky, and also a tract of well timbered land in Jackson county, containing more than 20,000 acres.

The twelfth clause of the will is:

"All of my property in Jackson and Rock Castle counties, Ky., I give to my sons, Wm. R., Thomas and Robt. L. Thomas, and my daughters, Mrs. Mary T. Ireland and Mrs. Tom Thomas Moore, equally that is a one-fourth to each the same to be held, managed and disposed of by the three trustees named in paragraph 11 of this will, for the use and benefit of my said four children, and subject to all the same conditions, limitations and trusts as appear in said eleventh paragraph with reference to the interests therein given to said four children, with this exception, that same shall not be sold until after the expiration of at least three years after my death, the said trustees to have the right in their discretion to postpone said sale until as much as ten years after my death."

As will be seen, the only devisees of the property, mentioned in the clause of the will are the two sons who were given a one-fourth each, and the two daughters who were given a life interest in a one-fourth each with remainder to their children, and that the trustees are vested with the power to sell the property therein devised, but this power may not be exercised until after three years succeeding the testator's death, but it must not be postponed longer than ten years after his death.

The thirteenth clause of the will authorizes any two of the trustees to execute the trust should there be a disagreement between the three appointed.

By sub-section 3 of section 11 of the will the testator nominated the Security Trust & Safety Vault Company of Lexington, Kentucky, trustee for his two daughters, with authority to take charge of the property devised to them, including the proceeds of the sales of the property mentioned in the twelfth clause after the trustees under the will should have sold it as therein directed. The trust company was authorized to pay to the two daughters the income from their respective portions during their respective lives and at their deaths to turn over the property to their children with certain limitations not necessary to the decision of this case.

At the time of the testator's death, Mrs. Ireland was the mother of two infant children, appellants James T. and Laura Clay, they being children by a former husband, and Mrs. Moore was the mother of the cross-appellants, William Estill Moore, Rogers Moore and Marion Moore, who were infants.

Directly after the death of the testator, Mrs. Moore died. After her death, and something near three years and five months after the death of the testator, negotiations began between Mrs. Ireland and Thomas E. Moore, one of the executors and trustees under the will as guardian for his infant children on the one part, and the other two trustees under the will on the other part, looking to a sale of the two undivided one-fourth interests of the Jackson and Rockcastle county properties devised to the two daughters and their children under the terms of the twelfth clause of the will, and this finally terminated in an agreement whereby the two Thomas boys, William R. and Robert L., as trustees, agreed to pay for the interest of their two sisters, $47,500.00 each, which was at the rate of $190,000.00 for the entire property. This was followed by a deed executed by the trustees as such to William R. and Robert L. Thomas individually conveying the one-fourth interest each in that property devised to the two daughters and their children. This deed was made in January, 1909, although negotiations had been entered into and an agreement reached some months before that time.

Within less than three years after that purchase by the two sons of the testator they sold the property for the price of $20.66 2-3 per acre for the Jackson county land, and also sold the Rockcastle county property, consisting of the mill, mill site, &c., all for a total sum of

about $490,000.00, which, as will be seen, was an increase of $300,000.00 above what they had paid for it.

This suit was filed by Mrs. Ireland and her two children against her brother, R. L. Thomas, and the representatives of W. R. Thomas, who had died, and their co-trustee, Thomas E. Moore, and against the latter as guardian for his children, and the children and the trust company as trustee, seeking to charge the two brothers with the plaintiff's proportion of the profits which defendants realized out of their purchase and sale of the trust property, upon the grounds that as trustees they had no right to sell to themselves individually the trust property, and further, that so far as Mrs. Ireland was concerned (she being the only adult interested in any of the property devised to the two sisters and their children) she was induced to agree to the terms of sale through fraudulent misrepresentations made to her by her brothers concerning the value of the property, and about which she was totally ignorant.

The answer denied the allegations of the petition, alleging fraud and misrepresentation, and charged that the purchase of the two interests of their sisters was made in good faith and for an adequate consideration, and as against Mrs. Ireland pleaded facts alleged to constitute an estoppel as to her.

In another paragraph defendants attempted to rely upon a judgment obtained in the Clark circuit court in an ex parte proceeding filed for that purpose wherein the court by its judgment attempted to approve of the sale by the trustees to themselves individually which had been previously agreed to.

A reply consisting of a denial and an attack of the alleged judgment of approval of the sale made the issues, and after extensive preparation and submission, the court dismissed the petition, and to reverse that judgment, Mrs. Ireland and her children prosecute this appeal, and an appeal is also prosecuted on behalf of the Moore children.

It will thus be seen that the precise question for determination is not the right of a trustee to purchase the trust property from the *cestui que trust,* but it is the right of the trustee to purchase the trust property from himself as such trustee. Generally speaking, unless modified by some peculiar facts, a trustee cannot purchase from himself the trust property free from the right of

the *cestui que trust* to either treat his purchase as a continuation of the trust or to adopt the subsequent disposition of the property by the trustee and to ask for an accounting of the profits realized by the trustee.

This general rule is of ancient origin, and is recognized by all courts with perhaps as much unanimity as any other principle of law. Sugden on Vendors, 8 Amer. Ed., Vol. 2, pages 410-423; Story's Equity Jurisprudence, 13th Ed., Vol. 1, secs. 321 and 322; 39 Cyc, page 366; Lambert v. Bainton, 1 Cha. Ca. 199 (Eng.); Perry on Trusts, 6th Ed., Sec. 195; Lewin on Trusts, pages 395-398; Bispham's Equity, Sec. 94; Scholle v. Scholle, 101 N. Y. 167; Davoue v. Fanning, 2nd John, Chancery, 252; Campbell v. Walker, 5 Vesey, Jr., 678; *ex parte* James, 8 Vesey 337; Whichcote v. Lawrence, 3 Vesey, Jr., 740; Frazier v. Jeakins, 64 Kan. 615; Scott v. Gamble, 9 N. J. Equity 218; DeCarters v. Le Ray DeChaument, 3 Paige (N. Y.) 178; Andrews v. Hobson, 23 Ala. 219; Amer. & Eng. Ency. of Law, pages 1020-1023; Hindman v. O'Connor, 54 Ark. 627, and innumerable other text books and adjudicated cases which might be cited.

Illustrative of this universal rule, it is stated in Sugden on Vendors, page 408: "If persons having a confidential character were permitted to avail themselves of any knowledge acquired in that capacity, they might be induced to conceal their information and not to exercise it for the benefit of the persons relying on their integrity. The characters are inconsistent. Where the trustee buying is the trustee for sale, the purchase is absolutely void; where he is a mere trustee he must show that the transaction was in all respects a fair one."

In the volume of Cyc. referred to the rule as gathered from all the authorities, many of which are cited in the note, is stated: "One of the most familiar doctrines of the law of trusts is that the trustee cannot purchase from himself or at his own sale. The law does not stop to inquire into the fairness of the sale or the adequacy of the price, but stamps its disapproval upon a transaction which creates a conflict between the self-interest and integrity of the trustee. The rule embraces not only direct purchases, but also indirect purchases through third persons, and applies regardless of whether the sale is private or under decree, or whether the *cestui que trust* is an infant or an adult, and even though the purchaser

is only one of several trustees, or is acting as agent for a third person.''

In the case of Hindman v. O'Connor, *supra,* in referring to the rule it is said, *inter alia,* ''As a general rule a party occupying a relation of trust or confidence to another is, in equity, bound to abstain from doing everything which can place him in a position inconsistent with the duty or trust such relation imposes upon him, or which has a tendency to interfere with the discharge of such duty. Upon this principle no one placed in a situation of trust or confidence in reference to the subject of a sale can be the purchaser, on his own account, of the property sold.''

The court continuing discusses the rights of the *cestui que trust,* including the remedies open to him in such cases, and finally, quoting from Imboden v. Hunter, 23 Ark., 622, says: ''It is a stern rule of equity that a trustee to sell for others is not allowed to purchase, either directly or indirectly, for his own benefit, at the sale. He can not be both vendor and purchaser. As vendor it is his duty to sell the property for the highest price, and as purchaser it is his interest to get it for the lowest, and these relations are so essentially repugnant —so liable to excite a conflict between self-interest and integrity that the law positively forbids that they shall be united in the same person. And it matters not in the application of this rule that the sale was *bona fide* and for a fair price. The inquiry is not whether there was fraud in fact. In such a case the danger of yielding to the temptation is so imminent, and the security against discovery so great, that a court of equity, at the instance of the *cestui que trust* if he applies in a reasonable time, will set aside the sale as of course.''

In some cases, as will be found from the authorities, *supra,* a trustee, especially if he be one not vested with the power of sale, may be empowered by a court of equity to become a bidder at the sale of the trust property. But we think that practically without exception the exercise of such authority by the court is always confined to cases where the trust property is sold at public sale where the bidding is competitive and where the court rightfully has jurisdiction of the persons of both the trustee and *cestui que trust* as well as of the *rem* in a proceeding justifiably brought for the purpose of securing the aid or procuring the advice of the court in carry-

ing out the trust. But where the property is not already in *custodio legis* in the character of proceeding just described, and where the trustee has full and complete authority from the creator of the trust to sell, we have been unable to find any authority for a court of equity in proceedings brought for that purpose only, to remove by its judgment the disabilities of the trustee so as to enable him to legally purchase the trust property from himself as trustee, nor have we been able to find any authority in the character of case just described whereby a court of equity in a proceeding brought for that purpose might approve of a private sale of the property by the trustee to himself so as to make it effectual and binding against the *cestui que trust*. The principles relating to the disabilities of trustees to purchase the trust property, hereinbefore discussed, have been adopted by this court, as will be seen from the following cases: Price v. Thompson, 84 Ky. 219; Markwell v. Gay, 9 Ky. Law Reporter 679; Wagner v. Swift's Iron & Steel Works, 16 Ky. Law Rep. 273; Avery's Trustee v. Avery, 90 Ky. 613; Faucett v. Faucett, 1 Bush 511; Charles v. Daniels, 140 Ky. 379; Conrad v. Conrad, 152 Ky. 422; Baker v. Lane, 118 S. W. (Ky.) 963; Grier v. Payne, 9 Dana 188, and many other cases which could be cited.

Indeed, counsel for the trustee admit the existence of the general rule, as was evidenced by the procuring of the *ex parte* judgment, but they insist that under some modifications found in the cases, *supra,* including that of Faucett v. Faucett, the otherwise invalidity of the sale here attacked was cured by the *ex parte* judgment, and, further, that their clients made the purchase under the exception to the rule stated in the case of Price v. Thompson, *supra,* whereby the trustees and the *cestui que trust* "consciously and intentionally dealt with each other, each knowingly taking a part in the transaction from which results a contract or conveyance." Also, that the trustees paid a full and adequate consideration when they purchased the interests of the *cestui que trust* in the trust property.

As to the first contention, we have already incidentally referred to it. The court, when it entered the judgment approving the private sale, did not do so as an incident to its having the parties and the property before it for other recognized legal purposes. The cases wherein a trustee was even permitted to bid at a decretal sale of the trust property are cases where it was necessary in a proper proceeding for the court to order the sale

and the granting of leave for the trustee to bid was but an incident to that proceeding. Here, the trustees had the plain and undisputed right to sell the property without going into court. There is no ambiguity in the terms of the will necessitating the interposition of a court, nor does there exist any obstacle or difficulty which the court might be called upon to remove or solve.

The *ex parte* proceeding had for its sole purpose the obtaining of judicial sanction of a violation of the wholesome and healthy rule which we have discussed and to thereby deprive the *cestui ques trust* of the benefits of its strict observance; to render competent a purchaser who was otherwise incompetent, and to create ability and capacity where there were none. The relief sought was not incidental to any matters connected with the proceeding, and we have searched the books in vain to find any authority for it. Even if there existed such authority, we would not be disposed to hold that it could be exercised through the character of proceeding employed. The petition to obtain that relief in this case was signed by the trustees, the Moore children by their guardian, the children of Mrs. Ireland by their next friend, and by Mrs. Ireland, and is styled "Petition Exparte."

There is filed with it a copy of the will and some affidavits supporting the statements made in the petition. Upon the filing of the petition and the affidavits the judgment was rendered. No contest of any kind was inaugurated by the proceeding, and no testimony in the regular way was heard, and to our minds it was no more efficacious to obtain the relief sought than if the judge had been met upon the streets and his consent obtained, which he afterwards filed as the judgment of his court. Long standing and beneficial rules of equity, having for their purpose the prevention of fraud and the promotion of honesty, may not thus be set aside, and we are not disposed to give that judgment any effect whatever in this case. See City of Covington, Ex Parte, 176 Ky. 140.

The second defense referred to as being supported in the opinion in the case of Price v. Thompson, *supra,* is under the facts of this case equally untenable. In the opinion in that case, after stating the general rule hereinbefore discussed, it is said:

"While the same general principle governs all persons occupying a fiducial character, yet there are two classes of cases controlled by 'different special rules.'"

"The first class includes all those instances in which the fiduciary, and those with whom he stands in that relation, consciously and intentionally deal with each other, each knowingly taking a part in the transaction from which results a contract or conveyance. Here the contract is not necessarily voidable; it may be valid; but a presumption of its invalidity arises, and that so strong that nothing short of clear evidence of good faith, of full knowledge, of adequate consideration, and of independent thought, consent and action, can overcome it.

"The second class is where the fiduciary, acting with reference to his trust, deals with himself in his private or individual character, as where an agent to sell sells the property to himself, or a sheriff buys the property at his own sale. Such transactions are always voidable at the suit of the party concerned. They are not merely presumptively invalid, as in the first class, where good faith, full knowledge, adequate consideration, independent thought, consent and action may be proved, because the sale or purchase, if made privately, is not known; or if made publicly, by coercive authority, cannot be controlled; therefore, the good faith, full knowledge, etc., do not control. For these reasons the presumption of invalidity in the first class is rebuttable, and the presumption of invalidity in the second class is conclusive. (Pomeroy's Equity Jurisprudence, vol. 3, sections 956 957.)"

It will be seen that where the parties "consciously and intentionally deal with each other" the contract is still presumed to be invalid, and that presumption is "so strong that nothing short of clear evidence of good faith, of full knowledge, of adequate consideration, and of independent thought, consent and action can overcome it."

In this case the only *cestui que trust* who was *sui juris* even pretending to give consent to the sale was Mrs. Ireland. She had only a life interest in one-fourth of the property, the remainder interests being held by her infant children. As for the interest of the Moore children, not even a life tenant consented to the sale. It would be folly, in view of the authorities, *supra,* to contend that the infant *cestui ques trust* could consent so as to bind them, and neither their guardian nor a next friend could any more consent to a private sale than they could to a public sale without the formalities of obtaining a decree. Under these circumstances, this defense would not in any event be applicable to anyone except as to Mrs. Ire-

land. In order for the sale to be sustained as to her the evidence must show the good faith of the transaction, the adequacy of the consideration, a full knowledge of the facts and independent thought on her part, and we think it fails in each of those particulars. It is true she made an affidavit that the price agreed to be paid by the trustees was adequate, but it clearly appears that she had no knowledge of the condition of the property or its value, and was equally ignorant of all facts necessary to a complete understanding of existing conditions. Her affidavit was based solely on information obtained from the trustees.

Referring to the adequacy of the price, the evidence heard in this case is conflicting, a greater number of witnesses testifying that at the time of the purchase by the trustees the price agreed to be paid was inadequate than those who testified that the price was adequate. In addition to this, we are confronted with the outstanding fact that within less than three years after their purchase the trustees sold the property for more than two and a half times the sum they paid for it, and this, too, without any change in the physical conditions or surroundings of the property. No railroad had been built into that community whereby the facilities for marketing the timber were increased, nor was there even a rumor of such an enterprise at the time the trustees realized their enormous profit. As stated in brief of counsel for the trustees, "Shortly after this sale (the one by the trustees to themselves) Mr. W. R. Thomas died, and R. L. Thomas, and the heirs of W. R. Thomas, as expressed by Mr. Moore, by accident, as it were, found three wealthy gentlemen in West Virginia and Ohio who already had options on a large acreage of lands in those counties and wanted to buy additional land," which led to negotiations, finally resulting in the sale, the profits from which are sought to be reached by this suit.

The law is, as will be seen from the authorities, *supra,* that the *cestui que trust,* especially where the duties of the trustee are active, is not only entitled to the exercise of perfect good faith on the part of the trustee, but he is also entitled to the business acumen and active business ability of the trustee to discharge his duties in the same manner and to the same extent as if he were acting for himself. The very relationship of trustee and *cestui que trust* presupposes superior business capacity, better judgment and broader experience in commercial transac-

tions possessed by the trustee, and there would be no occasion for the relationship were these facts not true. Scarcely a third of the time within which the trustees here could sell the property under the will had expired. There was no necessity for an urgent sale. The testator contemplated a sale of the property in its entirety, and not in undivided parts. The trustees owed to their *cestui ques trust* the duty to bestir themselves and to put forth real and good faith endeavors to find the most advantageous purchaser, and they cannot be allowed to postpone such action until after they acquired the entire title to the property when they would be the sole beneficiaries of the fruits of their efforts to find an advantageous purchaser. So, under these circumstances, we see nothing in the utterances of this court in the opinion in the case of Price v. Thompson standing in the way of Mrs. Ireland to maintain this suit, and of course there is nothing therein militating against the right of the infants to do so.

It is also contended that the sale to the trustees was agreed to by the trust company, under the authority given to it by subsection 3 of paragraph 11 of the will, wherein it is said, "Said trustee and its successors in said trust shall have the power to change any investment at pleasure, if approved by the daughter interested."

The trouble with this contention is that the authority there attempted to be conferred relates to the property after it got into the hands of the trust company, and has no relation whatever to the *sale* of the property by the trustees located in Jackson and Rockcastle counties. But even under the clause quoted there is no power conferred upon the trust company to purchase the property itself, or to confer any such power upon the trustees under the will. The provision of the will referred to has to do solely with the handling of the proceeds to be derived by the trustees from the sale of the property during the lifetime of the two daughters.

Many other questions are discussed in briefs of counsel, but we do not regard them as of pertinent value, and will not lengthen this opinion by engaging in their discussion.

Stripped of irrelevant matter, this is simply a case where trustees purchased from themselves the trust property, and, as we view the record, for an inadequate consideration. One of the remedies of the *cestui que trust* in such a case, recognized everywhere, is stated in

Sugden on Vendors, *supra,* page 421, thus: "If the trustee has actually sold the estate, a *cestui que trust* may compel the trustee to pay him what he received above the original purchase price. If the *cestui que trust* adopt the sale by the trustee, he must submit to it altogether."

Here the trustees have sold the property, and the *cestui ques trust* are seeking to make them account for the profits. They clearly have the right to do so.

If it should be thought that the rule which we have applied is harsh, and in some cases apparently encroaches upon strict justice, it may be said in answer that there are many instances in the law where such seeming results occur. For instance, it would be a great disaster to a creditor holding a perfectly solvent note for a large sum, and to which there was no other defense, to be deprived of collecting it because his right to sue was barred by limitations; but no sympathetic condolences on the part of the court could give relief. We must administer the law as we find it. Indeed, there would be a more defendable incentive to give relief if possible to the one whose cause of action was barred than to a trustee in a case like the one we have here. The condition of the former was produced by mere lapse of time, arbitrarily fixed by the legislature, and non-action by the creditor during that time, which may have in part been caused by innocent oversight. The trustee, however, has no such palliating circumstances in his favor. He is forbidden to profit by trading for or trafficking with the trust property, thus arraying self-interest against that standard of good faith which the law exacts and demands of the trustee for the protection of the confiding *cestui que trust.* The doctrine is founded upon the principle that the strong must be honest and the weak must be protected.

Before the filing of this suit W. R. Thomas died, and it was filed against both his personal and real representatives. It appears in the record that as a guarantee of the title to the 20,000 acres of land in Jackson county payment was withheld on the purchase price of 2,000 acres. Under the contract of sale made by the trustees, when the title to all the land shall have been perfected, that part of the retained purchase price will be due, but if any part of the 2,000 acres should finally be lost to the purchaser, then nothing will be due from him for that part so lost. The court should therefore ascertain the amount of money actually collected by the trustees from the sale which they made, and the amount, if any, which is yet due, and deduct from the amount of these sums

the expenses, if any, which the trustees incurred in effecting the sale, or in perfecting titles, also the amount of taxes which they may have paid after their purchase of the trust property, and allow such sums as a credit upon the purchase price with interest, and adjudge in favor of Mrs. Ireland one-fourth thereof, and to the Moore children one-fourth, less $47,500.00, which they have been paid, and to make a complete settlement between the surviving trustee, R. L. Thomas, and the representatives of the deceased W. R. Thomas, and to take such steps as may be necessary to bring about that result.

Wherefore, the judgment is reversed, with directions to proceed in accordance with this opinion.