# M. C. Cornett, Isabella Mayhew, et al. v. Horn, et al.

(Decided December 12, 1924.)

## Appeal from Perry Circuit Court.

1. Contracts—Inter Partes Contracts Only Presumptively Invalid Because of Fiducial Relation.—Inter partes contracts, where all parties are sui juris and no title to the property sold is held by the one occupying fiduciary relation toward the others, are only presumptively invalid, and not necessarily voidable.

2. Executors and Administrators—Wills—Executor's Purchase of Undivided One-half Interest in Lands of Decedent Held Valid.—Contract whereby executor, who owned a one-half undivided interest in land of deceased in good faith, purchased remaining interest of heirs, who were all sui juris, held valid, and court's action in requiring accounting of profits on resale erroneous.

3. Specific Performance—Executor Held Entitled to Interest on Payment Made to Estate Under Contract with Heirs.—Executor, who, pursuant to contract with heirs of decedent for purchase of land of decedent, paid stipulated sum to estate, which was used in payment of decedent's debts, but took title only as trustee, held entitled, on decree requiring specific performance of such agreement by heirs, to interest from the time of payment.

4. Partnership—Partner Who Advanced Money for Purchase of Land Held Entitled to Interest Thereon.—Executor who, under partnership arrangement with deceased, had advanced initial payment on land purchased under such agreement, held entitled to interest on such advancement.

FAULKNER, STANFILL & FAULKNER for appellants.

J. F. EVERSOLE for appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

The Horns and the Cornetts, who were members of the same family, became discordant. To restore their former harmony they applied to the Perry circuit court, before which they chanted their troubles, and it adjudged them jointly blamable therefor, and this appeal by the latter brings the case here that we might play our part in bringing the members of the family orchestra in accord.

The facts are: That Arch Cornett died testate and a resident of Perry county on April 26, 1915. Appellee and plaintiff below, Frank Horn, was his son-in-law and had recently been sheriff of Perry county. The deceased owned a considerable quantity of land in Perry county consisting of different tracts, some of which was what is

known in this record as "wild lands," and it did not join
the home tract or tracts upon which the decedent resided
with his family. On March 7, 1914, plaintiff contracted
with the deceased in writing to purchase a one-half un-
divided interest in one of the wild land tracts at a stipu-
lated price, conditioned upon the performance of certain
obligations on the part of the deceased with reference
to the title and to surveying it, and at the time plaintiff
paid to the deceased $1,329.24. It was further stipulated
in that contract that neither of the parties should have a
longer period than one year to perform it. Later it was
modified so as to extend the time for its performance,
and before that was done Cornett died. In his will he
appointed as his executors P. T. Wheeler, a prominent
attorney of Hazard, one of his sons, and the plaintiff,
Horn, each of whom qualified, but they were devised no
interest in the lands of the deceased either legal or equit-
able, nor were they given any control of any of the real
estate of the decedent, and the only power they had with
reference to it was that afforded by law, which was to
procure a decretal sale by appropriate judicial proceed-
ings of enough of it to pay the debts of the decedent
should his personal property available for that purpose
be insufficient.

There is nothing in the record to show the amount
of the decedent's personal property, but it does appear
that he was considerably in debt, one of his principal
creditors being his son-in-law, the plaintiff, who, while
sheriff, had not only paid for him a number of execu-
tions, but had also advanced to him one or more loans.
The executors concluded (and from which we infer that
the debts exceeded the personalty of the estate) not only
that it would be necessary to sell some real estate in order
to pay debts, but also that it would be the part of wisdom
to sell some of the wild lands rather than any part of the
home tract or tracts, and to do so privately without the
expense of litigation. That matter was discussed be-
tween Wheeler and the decedent's son (two of the execu-
tors), and the heirs and widow of the decedent, who were
all adults, and it was agreed that it would be best for all
concerned to carry out that scheme. It was also con-
cluded by them, as we are convinced from the evidence,
that the most proper thing to do under the circumstances
was to sell the decedent's one-half undivided interest in
the parcel in which he had contracted to sell before his

death the other half interest to Horn, and the latter was approached upon that subject.

The evidence, to our minds, does not disclose that he was one of the instigators of that suggestion, but on the contrary when he was approached concerning it he was in accord with the purpose intended to be accomplished, but he did not readily concede to the suggestion that he should be the purchaser. After more or less discussion, and in view of the fact that he himself was a large creditor of the estate and already owned the equitable title to a one-half interest in the tract, he finally agreed to purchase the remaining half interest from the heirs at an average of about $22.50 per acre. Pursuant to that agreement Wheeler prepared a contract for the heirs to execute to Horn, and others besides himself carried it to the heirs, all of whom signed it except two, there being nine in all. Upon the delivery of it to plaintiff, and pursuant to a provision therein contained, he gave his check to Wheeler, one of the executors, and who seems to have been the active one in the discharge of the executorial duties, for the sum of $4,500.00; but pursuant to another provision of the contract no part of the proceeds of that check was to be paid to him on his indebtedness. The check was cashed and the proceeds paid on other indebtedness. Along about the time, or possibly before, plaintiff purchased from the decedent his half undivided interest in the tract of wild land hereinbefore referred to, he, with the assistance of his father-in-law, negotiated and effected a contract for the purchase of another tract of wild land from the Kentucky Coal Lands Company, which tract contained about 500 acres and adjoined the one in which plaintiff had obtained the equitable title to a half interest from his father-in-law. That contract, which was in effect a title bond, was executed to plaintiff alone and the price agreed to be paid when the deed was executed was about $22.50 an acre, and $2,000.00 was paid at the time to the vendor.

The heirs of the decedent refused to perform the contract between plaintiff and the decedent, which was executed in the latter's lifetime for a one-half undivided interest in the land hereinbefore mentioned, and also declined to perform the one they executed to him after decedent's death for the other half undivided interest in the same tract, and he filed this equity action against them and the other two executors seeking a specific performance of both those contracts, the one because de-

fendants were heirs of the decedent, and the other because they were vendors in their contract.

The heirs answered the petition in which they denied most, if not all, of its material averments, except the execution of the contracts, and by counterclaim and cross petition sought certain equitable relief against plaintiff because of facts therein averred. It was alleged in the counterclaim and cross petition, in substance, that the decedent and plaintiff, before and at the time of the transactions involved, had formed a partnership or a joint adventure, by the terms of which they were to purchase and jointly own coal lands in Perry and perhaps other counties in eastern Kentucky, and that pursuant to that agreement the deceased, before his death, executed the contract to plaintiff hereinbefore mentioned for a one-half undivided interest in the tract of wild land, and that the agreement to purchase the tract of the Kentucky Coal Lands Company was also made pursuant to the same alleged partnership agreement; that plaintiff held the equitable title to the latter tract in trust for the partnership, and that the $2,000.00 advanced to the vendor in that contract was made and done by the deceased with his own funds; that after plaintiff had obtained all the contracts hereinbefore referred to, he sold to another corporation known as Kentucky River Coal Corporation, both tracts of land for $30.00 per acre, and they prayed that plaintiff should be made to account to the estate of the deceased for the profits he realized in the sale of all the land to the Kentucky River Coal Corporation if all the contracts hereinbefore mentioned should be upheld; but they resisted specific performance of the contract executed by them after the death of the deceased upon the ground that plaintiff occupied toward them at the time the contract was obtained a fiducial relation, and that he took advantage of that fact and fraudulently procured them to execute it. If, however, it should be otherwise held, they then prayed for an accounting as to the land covered by the contract, as hereinbefore stated.

Appropriate pleadings made the issues and, after taking extensive proof, the cause was submitted and the court adjudged specific performance of the two contracts relating to the tract of wild land owned by the deceased, but held that plaintiff should account for the profits realized by him on the one-half interest in the tract purchased by him from the heirs after decedent's death upon the ground that, on account of his fiducial relation, he ob-

tained his title to that interest burdened with a trust in favor of the heirs to receive whatever profits he might realize upon a resale of it. The court further found that the alleged partnership between plaintiff and decedent existed with reference to the tract purchased from the Kentucky Coal Lands Company, which was done, as we have seen, in the name of plaintiff alone, and for that reason he should account for one-half the profits realized on the sale of that tract; but it also found that no partnership existed with reference to the tract originally owned by decedent. The judgment furthermore found that the advancement of $2,000.00 as a part of the purchase price for the tract from the Kentucky Coal Lands Company was made not by Cornett but by plaintiff, and gave him interest on that sum from the time it was paid, and likewise allowed him interest on the $4,500.00 which he paid to the executors hereinbefore mentioned. From that judgment defendants prosecute this appeal, there being no appeal nor cross appeal by plaintiff, who had died since the rendition of the judgment followed by proper reviver.

It will thus be seen that the questions for decision are largely ones of fact, and we do not feel that our duties, either to the profession or to the parties, require us to detail the evidence directed to the various issues of fact involved. There is absolutely no substantial evidence in the record to establish any partnership interest in the tract owned by the deceased, or that the purchase by plaintiff of a half interest in that tract from the deceased was pursuant to any such agreement, and the court did not err in adjudging specific performance of that contract. Since, however, there is no appeal from the judgment declaring such partnership agreement with reference to the contract with the Kentucky Coal Lands Company, it will be unnecessary to refer to, much less rehearse, the testimony upon that issue. However, it is appropriate to state at this point that the evidence quite conclusively shows to our mind that the $2,000.00 advanced as part of the purchase price of the latter tract was made and done by plaintiff and not by deceased. That fact is demonstrated to the point of almost a certainty, but were it otherwise, we entertain no doubt as to the correctness of the chancellor's finding on that issue, and under the well established rule in this court that finding will be treated as correct. There is left then for decision

these questions: (1) Did the court err in decreeing specific performance of the contract executed by the heirs of the deceased? And (2), was the judgment erroneous in allowing interest to plaintiff on the items of $2,000.00 and $4,500.00? We will dispose of them in the order named.

1. The vigorous insistence made in support of question (1), is bottomed upon the contention that at the time of the execution of the contract involved with the heirs of the decedent, plaintiff occupied such a fiducial or confidential relation to them as to render the contract void, or at least voidable, and that being true the heirs, under well settled principles of equity, had the choice to either repudiate the contract before execution, or to treat plaintiff as but a trustee for them with the reserved right in them to have him account for the proceeds of the property as such trustee; and that, since they elected to adopt the first alternative by declining to execute a conveyance to him, the court erred in refusing to allow them to do so, and in forcing on them the second alternative as the judgment did, as we have hereinbefore shown. In support of the contention made, counsel refers to the two cases from this court of Price v. Thompson, 84 Ky. 219, and Clay v. Thomas, 178 Ky. 199.

The first case involved the purchase at a judicial sale and, of course, would not be governed by any rule qualifying the general doctrine with reference to contracts *inter partes*: and the second one involved the question of the right of a trustee holding the legal title to the trust property with power of sale, to purchase it from himself as trustee, and neither of them presented facts calling for the application of a qualifying rule with reference to *inter partes* contracts. In both cases it was held that the contracts involved were, to say the least, voidable at the instance of the *cestui qui trust,* or the one to whom the purchaser occupied such relations, and that ruling is of universal application. If, therefore, the contract before us was of the class dealt with in either of those cases, the contention of counsel for appellants would be unanswerable.

But the general imperative rule, *supra,* has its modification and qualifications in contracts *inter partes* where all parties are *sui juris,* and no title to the property is held by the one occupying the fiducial relation toward the other. Such cases, as was held in both of the opinions, *supra,* are governed by what is known as "different

special rules,'' and the cases to which they apply, as well as the effect to be given them when applied, is thus stated in the Thompson opinion:

"While the same general principle governs all persons occupying a fiducial character, yet there are two classes of cases controlled by 'different special rules.' The first class includes all those instances in which the fiduciary, and those with whom he stands in that relation, consciously and intentionally deal with each other, each knowingly taking a part in the transaction from which results a contract or conveyance. Here the contract is not necessarily voidable; it may be valid; but a presumption of its invalidity arises, and that so strong that nothing short of clear evidence of good faith, of full knowledge, of adequate consideration, and of independent thought, consent and action, can overcome it.''

It is clear that this case comes within the first class referred to in that excerpt. The same modification of the general rule, governing the non-enforcibility of a contract by one occupying a fiducial relation towards his contractee, was recognized and upheld in the more recent case of Bailey v. Waddy, 195 Ky. 415. It remains, therefore, to determine whether the facts of this case bring it within that modification.

As we have hereinbefore stated, the contract involved was not actively solicited by plaintiff, and we think that he was by no means eager to enter into it. A survey of the situation was thoroughly made with the heirs, but in which he does not appear to have actively participated, although we do not place much stress upon the latter fact. All interested parties were extremely desirous to settle the debts of the estate with as little cost and expense to it as possible and at the same time to realize the funds for that purpose from the least desirable real estate of the decedent. Plaintiff already owned an equitable title to one-half interest in the tract he was purchasing from the heirs, and it was thought that he was the most suitable person to take over the entire title, so that he could thereby handle it as to accomplish the desired purpose better and more advantageously than any other person and at the same time the expense of a judicial settlement of the estate would be saved. Two of the heirs, as we have seen, did not sign that contract, but the name

of one of them, who was the wife of a Mr. Combs, was signed to it by her husband but who did not possess the requisite authority from her. The other one declined to sign it upon the sole ground that he thought the half interest involved was worth more than plaintiff agreed to pay under the contract. There is some evidence to show that it, perhaps, was worth as much as $25.00 per acre, to which fact some witnesses testified, while the extreme valuation fixed by any of them was $30.00 per acre. The great preponderance of the testimony, however, was to the effect that the price agreed to be paid by plaintiff in his contract fully represented the market value at the time. We do not, therefore, find that the question of inadequacy of consideration is involved. It is true that one of the heirs testified that another person offered $25.00 per acre before the contract involved was entered into, but it turned out that the offerer would not give that price except upon certain conditions which the heirs were unable to comply with, and that he would not pay that price for only the undivided one-half interest which plaintiff bought.

But it is said that at the time that contract was entered into, plaintiff had one with the Kentucky River Coal Company to sell that interest at $30.00 per acre, which seems to be true. However, it is shown that the purchaser would not pay that price without also purchasing the other half interest belonging to plaintiff and also the adjoining tract that plaintiff had purchased from the Kentucky Coal Lands Company. In other words, the purchaser demanded the sale of the entirety of both of those tracts as a condition precedent to paying that price. There does not appear in the entire record any act or any conduct on the part of plaintiff that to our minds, indicates bad faith on his part, or that he, in any manner, practiced any fraud on the heirs of Arch Cornett. If we are correct in that conclusion as to the facts, and about which we entertain no doubt, then the case comes within the "different special rule," *supra*, wherein the parties (even if we should concede there was such a confidential relationship existing between them as to render the contract suspicious) "consciously and intentionally deal with each other, each knowingly taking a part in the transaction from which results a contract or conveyance;" and, therefore, if there should be a presumption indulged as to its invalidity, it was overcome

in this case by the character of convincing evidence required by the "special rule."

Entertaining that view, it follows that the court was in error in holding that plaintiff should account for the profits he made on that half interest, and it was undoubtedly correct in decreeing specific performance of that contract by the heirs; which brings us to question (2) above referred to.

(2) In disposing of this question, it is argued that the $4,500.00 paid by plaintiff at the time of securing his equitable title from the heirs of the deceased should be considered as a payment on the purchase price, if the contract should be executed, as we have held it should, and that it should not bear interest; and that if plaintiff advanced the $2,000.00 as payment on the land purchased from the Kentucky Coal Lands Company, then it was made to the partnership and that one partner is not entitled to interest upon advancements made to the firm until a settlement has been made and a balance struck. As a general proposition, those contentions are true, but we do not think they are controlling under the peculiar facts of this case. As to the $4,500.00, it was paid as the judgment below held, under such circumstances as to render the plaintiff the holder of the title he acquired *as trustee,* with liability to account to the heirs, and we think under those circumstances they should account to him for interest on that payment. As to the $2,000.00, it is shown that it was all the money put into the adventure or partnership that the court found to exist, by either partner with reference to the tract of land on the purchase price of which it was paid, and there were no partnership accounts to settle or any balance to be arrived at, and we conclude that under the peculiar facts and circumstances of the case, the court did not err in allowing interest on that item. We do not deem it necessary to further elaborate the points contended for under this objection, since we are convinced the facts of the case, as hereinbefore set out, authorize the judgment appealed from.

Finding no error sufficient to authorize our interference, the judgment is affirmed.