Donna Turner THOMAS, Peggy Turner Hightower, Bradley Kirk Turner, Stacy Jean Turner, Troy Turner, Hope Turner, Angie Turner and Jason P. Turner, Appellants,

v.

Charles P. TURNER, Christine T. Cassity and First Security National Bank and Trust Company, Trustee Under the Will of W.U. Turner, Appellees.

No. 86–CA–558–MR.

Court of Appeals of Kentucky.

March 20, 1987.

As Modified on Denial of Rehearing June 12, 1987.

Discretionary Review Denied by Supreme Court Oct. 7, 1987.

Shelby C. Kinkead, Jr., Wayne F. Collier, Bulleit, Kinkead, Irvin & Reinhardt, Lexington, for appellants, Donna Thomas, Peggy Hightower and Bradley Turner.

Fred E. Fugazzi, McBrayer, McGinnis, Leslie & Kirkland, Lexington, for appellants, Stacy Turner, Troy Turner, Hope Turner, Angie Turner and Jason Turner.

John G. Irvin, Jr., William M. Lear, Jr., Stoll, Keenon & Park, Lexington, for appellees.

Before COMBS, LESTER and McDONALD, JJ.

COMBS, Judge.

This is an appeal from the Fayette Circuit Court involving judicial approval for the sale of one hundred acres of agricultural real estate, a portion of the Turner Farm.

The will of W.U. Turner, deceased, established two trusts and named appellee First Security National Bank and Trust Company (Bank) as trustee of both. Trust A is a marital trust and is for the sole benefit of Turner's surviving spouse, Lucy Mary Turner. Trust B is a residuary trust and includes the real estate that is the subject of this action. Turner instructed that the income generated from Trust B be paid to his wife, for life, with all income exceeding her needs to be paid to their two children, appellees Charles P. Turner (Charles), and Christine Turner Cassity (Christine).

Should Charles and Christine survive their mother, the will directs that they share the income from Trust B equally for life. The next level of beneficiaries is the heirs of Charles and Christine in whom the corpus will eventually vest after the deaths of Charles and Christine. Charles has two surviving children, appellants Peggy Turner Hightower, and Donna Turner Thomas. Charles' third child, Charles, Jr., is deceased, but he left Charles six surviving grandchildren: appellant Kirk Turner, and infant appellants Jason, Angie, Hope, Troy, and Stacy Turner. Christine's two children are not parties to this appeal.

The will gave the bank the power to sell the entrusted land subject, of course, to other provisions in the will and applicable statutes. The bank also imposed a degree of self-restraint upon its power to sell trust properties by dint of its own Trust Policy Manual.

Don Ball, Jr., on behalf of Ball Homes, Inc., contacted the bank offering to purchase the one hundred acres for $10,000 per acre. A representative of the bank's trust department contacted the income beneficiaries under the trust, appellees Turner and Cassity, to determine if they wanted to sell the land. They agreed to sell. A contract for the sale of the land was entered into between the appellees and Don Ball Homes, Inc. An action was filed in the Fayette Circuit Court seeking judicial approval of the sale. Appellants resisted the sale. The sale was approved by the court,[1] and this appeal followed.

Appellants argue that the sale should not have been approved, and much of their argument concerns the relationship between the sellers and buyer. Don Ball, Sr., and his wife wholly own Don Ball Homes, Inc., which has become over many years a multi-million dollar customer of appellee bank. Also, shortly before the purchase agreement was signed, Don Ball, Sr., was appointed to the bank's board of directors. Therefore, appellants claim the bank breached its duty to the trust beneficiaries and remaindermen by selling the property to a favored corporate customer which is owned by one of its own directors. Appellants also say that the court incorrectly found that the bank did not give preferential treatment to Don Ball and his company, and erred in approving the sale for a purchase price that was below fair market value.

Appellees counter saying that due to the real estate's annual return on investment being unreasonably low (.8%), the sale of the property was justified. Also, the sale increased the income of Lucy Turner. Therefore, appellees maintain, the sale was not a breach of the bank's fiduciary duty. We are not persuaded by these considerations.

■ The bank's own trust policies prohibit selling trust real estate when the potential for appreciation is high, even though the current income production is low. This land had strong potential for drastic short term appreciation. All indications existing at the time of the sale pointed to this conclusion. The land was surrounded by residential developments, one of which abutted the Turner Farm property and was even stubbed into it. One of the bank's own appraisers testified that once sewer access became a reality, the value of the land would increase by $3,000 per acre, or $300,000. Sewer access became a reality less than a year after the sale. Two appraisals of the land contained in the bank's own files when Ball Homes, Inc., first contacted the bank with its offer to purchase, concluded that the highest and best use for the property was retention for future appreciation and development. And, finally, none of the individual appellees, or Lucy Turner, ever complained about not receiving enough trust income.

A bank's decisions as trustee cannot be expected to be omniscient, nor tolerated to be oblivious. We believe the facts mani-

---

1. Page five of the trial court's findings of fact was entirely missing from the record on appeal, along with any clue to its disappearance. This reviewing court reminds members of the trial bench and bar that meticulous preparation *and* *preservation* of a complete record for appeal always makes appellate review more expedient and, occasionally, even possible. Also, *See* CR 75.08.

fest a breach of duty by the bank to not only the remaindermen, but to the income beneficiaries as well.

Appellants contend that a conflict of interest existed which should have precluded judicial approval of this sale. Again, Ball Homes, Inc., is a substantial customer of the bank, having given the bank mortgages over a five year period prior to the sale totalling approximately $13,000,000. One month before the contract was signed, Don Ball, Sr., principal owner of Don Ball Homes, Inc., was appointed to the bank's board of directors.

 A trustee's duty owed to the beneficiaries, when selling trust property, is to sell the property for the best obtainable price, while any prospective purchaser will seek to buy the same property as cheaply as possible. When seller is a bank and purchaser is one of the bank's directors, conflicts over interest are inescapable. *See Clay v. Thomas*, 178 Ky. 199, 198 S.W. 762 (1917). Once again, the bank's own trust policies rail against self-serving practices and conflicts of interest.

The facts of record connected to this sale include evidence of the bank's giving special considerations to Ball Homes, Inc., that it could not give to other potential purchasers if the land had been offered at public auction; that the bank made no efforts to market the land through its real estate division or with any real estate broker; the bank never informed the remaindermen of its contemplated sale; and, after Ball Homes, Inc., communicated its first purchase offer to the bank, the bank did not so much as make a counteroffer. These facts are enough to convince this court that it was error to permit the property to be sold in the presence of these conflicts.

But appellees seem to have the attitude that while there probably, or certainly, does exist a conflict of interest, such does not preclude the judicial approval of the sale because the sale was fair and reasonable under the circumstances; circumstances including the sale price. Appellants argue that the trial court erred by not concluding that the property was sold for a price less than its fair market value, and based upon the appraisals of record we are likewise convinced.

The bank's appraiser estimated the property's value for agricultural purposes two years before the property was sold which was clearly well below its value as residential property at the time of the sale. All but one of the comparable sales relied upon by the appraisers were for property that had no potential for residential development. The one sale actually comparable to the sale of the Turner land was in the price range of the sale of the Turner land, but was made five and one half years before the sale of the Turner land. When the bank's appraiser was asked to reappraise the land at the time of the sale, he placed an *agricultural* value of $7,500 per acre on it.

The remaindermen's appraiser based his valuation of the land upon comparable sales that much more resembled the Turner property. His estimates, at the time of the sale and a year afterwards, were five or six thousand dollars per acre higher than the price paid by Don Ball Homes. Assuming the bank's sale of the Turner property was desirable in the first place, a better price surely could have been realized.

We believe that approval of the sale of this land was clearly erroneous based upon the above. Additionally, appellants argue that KRS 389A.032 is unconstitutional. We do not reach this question because we reverse on other grounds.

As the trial court found that the land could not be divided without materially impairing its value, and we agree, the judgment of the Fayette Circuit Court is hereby reversed and remanded for a new trial consistent with this opinion.

All concur.