## Sparrow, et al. v. Sparrow, et al.

(Decided June 16, 1916.)

## Appeal from Fayette Circuit Court.

1. Wills—Construction and Operation—Intention.—In all cases in which the question arises as to whether a judicial sale is prohibited by a will, as well as the extent of the prohibition, the decision must depend on the intention of the testator as expressed in his will, and unless the intention to prohibit is clearly found to exist, the prohibition will not be declared.

2. Wills—Construction.—The will under consideration in this case held not to prohibit a judicial sale for reinvestment.

LESLIE T. APPLEGATE and LEWIS L. MANSON for appellants.

HUNT & BUSH, J. N. ELLIOTT and CHAS. F. EXUM for appellees.

JAMES N. ELLIOTT for Jennie B. Downing.

OPINION OF THE COURT BY JUDGE CLARKE—Reversing.

Mary J. Bosworth, of Fayette county, died testate in 1895. She devised her "South Broadway Inn" property, located on South Broadway in Lexington, and her "Toll Gate" tract of about four acres, near Lexington, to her sister, Lucy A. Downing, for life; remainder to her three daughters, Lula Sparrow, Addie Rose and Jennie Downing for life, with remainder in fee to their daughters. Lucy A. Downing, the first taker, is dead.

Lula Sparrow has three daughters, Virginia Banford, Mary B. Sparrow and Gladys Sparrow. Jennie Downing has five daughters, Alice Higgins, Lucy Crum, Mary Arnett, Ethel Portwood and Lillian Downing. Addie Rose has one daughter, Mary Louise Rose.

In August, 1915, Lula Sparrow and her daughter, Virginia Banford brought this action against Mrs. Downing and Mrs. Rose and their daughters, as above mentioned, seeking a sale of the two pieces of property above referred to, upon the ground of their indivisibility and a division of the proceeds into three equal portions which they asked the court to reinvest for each of the present life tenants and their daughters, respectively.

Upon proof showing the indivisibility of the property and the wholly inadequate income therefrom, considering its value, the circuit court ordered a sale of the land and a division and reinvestment of the proceeds in three separate portions as asked. At the sale, Joseph Dinelli became the purchaser of the "Toll Gate Tract" for $1,400.00, and Mrs. Jennie Downing became the purchaser of the "South Broadway Inn" property at $9,000.00.

Mrs. Downing excepted to the sale chiefly upon the ground that the sale of the property was forbidden by the will of Mary J. Bosworth. The guardian *ad litem* for the infant defendants also excepted to the sale upon the ground that the price bid for the property was grossly inadequate. He filed several affidavits to the effect that the "South Broadway Inn" property was reasonably worth $12,000.00.

The chancellor sustained Mrs. Downing's exceptions to the report and set aside the sale of the "South Broadway Inn" property, upon the ground that a sale of the property was forbidden by the will of Mary J. Bosworth until after the death of Mrs. Sparrow, Mrs. Rose, and Mrs. Downing. All other exceptions were overruled.

At the same time and for the same reason the court sustained a demurrer filed to the petition by Charles F. Exum, the guardian *ad litem* for the infant defendants. The plaintiffs appeal.

The property passed under the third clause of Mary J. Bosworth's will, which reads as follows:

"I give to my sister, Mrs. Mary A. Downing, my house and lot on South Broadway, I also give to her a lot of ground on the old Frankfort pike, on which the toll gate now stands; this is given her free from the control of her husband in any way; this is not to be sold but rented for her. I leave this in the hands of the trust company to be managed by them for her, at her death

this is to go to her three 'daughters, Mrs. Lula Sparrow, Mrs. Addie Rose, Mrs. Jennie Downing, the rents to be equally divided between them and at their death go to their daughters; it can then be sold and divided between them; this I leave to them independent of their husbands in any way."

Appellants contend that this is an action by one of the life tenants and one of the adult remaindermen against all the other interested parties under section 491a of the Civil Code, which reads as follows:

"Remainder and contingent interest in real estate may be sold upon petition of any person having a present or vested interest, all persons in being having any interest in such estate being made parties to the action. If the court shall be satisfied that the interest of all concerned would be subserved by such sale, it shall adjudge accordingly; which judgment and sale thereunder shall invest the purchaser with all title of the present and future contingent claimants to the said real estate."

1.  A number of interesting questions are presented by opposing counsel, but we need consider but one which decides the whole matter before us, and that is, was the sale of the property forbidden by the will?

Unquestionably the testatrix had the right by her will to prohibit absolutely the sale of her property for any period of time not beyond the limitation placed upon final alienation and distribution of her estate under section 2360 of the Kentucky Statutes, but the manner in which the prohibition of the sale must appear was stated in the very recent case of R. L. Gillespie v. Avery S. Winston's Trustee, et al., decided by this court on June 8, 1916, as follows:

"But in all cases in which the question arises whether there is such a prohibition or not, as well as the extent of it, the decision must depend on the intention of the testator as expressed in his will, and unless the intention to prohibit is clearly found to exist, the prohibition will not be declared." Citing in support thereof the following authorities: Farris v. Rogers, 9 K. L. R. 912; Warfield v. English, 11 K. L. R. 263; Lindemeier v. Lindemeier, 91 Ky. 264; Rousseau v. Page, 150 Ky. 812 and Luttrell v. Wells, 97 Ky. 84.

This question has frequently been before this court and because of the difference in the language employed in different wills the prohibition has been sustained in

many cases and denied in many others.  Morton's Gdn. v. Morton, 120 Ky. 251; Lee v. Lee, 141 Ky. 62; Moore v. Thompson's Admr., 80 Ky. 424; Chenault v. Burgess, 93 S. W. 664; Moore v. Potter Matlock Tr. Co., 167 Ky. 201, and the cases cited above.  Counsel for appellees maintain that the distinction is, that when the will prohibits the sale by the trustee, life tenants or other particular agency, the courts have held that such a prohibition does not include a decretal sale, but that where the prohibition is general, even a decretal sale cannot be had.  This is certainly one distinction recognized in the decisions, but the other distinction to which we have called attention as having been made in the case of Gillespie v. Winston's Trustee, *supra,* is equally as well recognized and of universal application.  It is always a cardinal rule in the construction of a will as a whole, and as to any particular provision thereof as well, to give effect to the intention of the testator as manifested by the will.

Turning now to the third clause above, which is the only part of the will involved, it will be seen that the prohibition, in express terms, is only against a sale during the lifetime of the sister of testatrix, Lucie A. Downing, who is now dead, and that the sale during the lives of Lucie A. Downing's daughters, the present life tenants, if prohibited at all, is prohibited only inferentially and not expressly; and it will be further noticed that the clause provides that after the death of Lucie A. Downing the rents shall be equally divided among the present life tenants.  Clearly testatrix said and intended that there should be rents to be divided among these life tenants.  The will does not say that the property shall not be sold during the lives of the present life tenants, but that it can be "sold and distributed" at their death.  Even if we should disregard the provision for an income for the life tenants, this language is at most but a prohibition against a "sale and distribution," i. e., a sale for distribution, and does not prohibit a sale for reinvestment.  And when considered in connection with the income provision, certainly is only a prohibition against a sale for distribution.  The "sold and distributed" is clearly used to indicate the final alienation of the fund provided for the sister of testatrix and her female descendants.  It is clear that the testatrix intended to make some valuable provision for

the present life tenants, and that she meant that the *corpus* of the estate devised should be preserved for the benefit of the remaindermen. Under the proof here it is apparent that unless the property is sold and the proceeds of the sale reinvested, the provision made for the present life tenants is of no value, and that the preservation of the *corpus* of the estate for the remaindermen is endangered; for not only does the property not produce an income for the life tenants, but it is reasonable to anticipate, in fact it is almost certain, that before their tenancy will have expired the income from the property as now invested will be insufficient to keep up the fixed charges against it.

Counsel for the purchaser, who is one of the present life tenants and a party to this suit, in her answer not only did not oppose the sale as prohibited by the will but alleged that the sale was permissible, proper and necessary, is now suggesting in brief that the proceeds of the sale of the "Toll Gate" property be used in order to repair and hold from sale the "Broadway Inn" property. Certainly if a sale of one piece of the property is prohibited by the will so is the other, and it is equally as certain that nothing of this kind was intended by the testatrix, and that she only intended by whatever restriction she placed upon a sale to preserve the *corpus* of the estate for the remaindermen.

We, therefore, conclude that to carry out the expressed intention of the testatrix it becomes necessary, because of present conditions, to sell the property and reinvest the proceeds, because in no other way can her desires to provide an income for the present life tenants, and preserve the *corpus* of the estate for the remaindermen be accomplished.

It, therefore, results that the chancellor correctly construed this will when he adjudged a sale for reinvestment, and that he was in error when he set aside the sale upon exceptions of the purchaser, and that he also erred in sustaining the demurrer of the guardian *ad litem* to the petition.

Wherefore, the judgment setting aside the sale and sustaining the demurrer of the guardian *ad litem* to the petition is reversed for proceedings consistent herewith.