## Consolidated Realty Company, et al. v. Norton, Sr.'s Trustees, et al.

(Decided May 18, 1926.)

Appeal from Jefferson Circuit Court
(Chancery Branch, Second Division).

1. Trusts—Statute Prohibiting Sales for Reinvestment when Deed or Will Forbids it Held Not to Apply to Sales under Act Authorizing Sales of Property Held in Trust (Acts 1881-82, chapter 991; Civil Code of Practice, sections 491, 492, subdivision 1).—Civil Code of Practice, section 492, subdivision 1, prohibiting sales under section 491 authorizing sale of property in which there is reversion of remainder for reinvestment when deed or will forbids it, does not apply to sales, under Acts 1881-82, chapter 991, authorizing sale of property held in trust, as that act was not an amendment of section 491, and refers to inter partes sales with court's approval and not to decretal sales.

2. Trusts—Act Authorizing Sale of Trust Property Applies, though Instrument Creating Estate Contains Restrictions Against Alienation (Acts 1881-82, Chapters 991, 1400).—Under Acts 1881-82, chapters 991, 1400, court may authorize sale of property held in trust, though instrument creating the estate contains restrictions against alienation.

3. Trusts—Will Executed, after Effective Date of Statute Providing for Sale of Trust Estate, is Subject to Terms of Statute (Acts 1881-82, Chapter 991).—Will of testator, executed after effective date of Acts 1881-82, chapter 991, providing for sale of trust property, whether forbidden in instrument creating estate, is subject to terms of statute.

4. Trusts—Trustee, with General Power of Sale, Held Not Denied Authority to Sell Trust Estate (Acts 1881-82, Chapters 991, 1400).—Will giving trustees power to sell and convey lands, except as therein provided, and further providing that trustee should hold trust property, termination of trust without specific inhibition against sale did not deprive trustees of authority to sell the prop-

erty under approval of court as provided by Acts 1881-82, chapters 991, 1400, as restraints on alienation must clearly appear.

M. L. MARSHALL for appellants.

HUMPHREY, CRAWFORD & MIDDLETON and WILLIAM C. COLEMAN for appellees.

OPINION OF THE COURT BY CHIEF JUSTICE THOMAS— Affirming.

George W. Norton, Sr., died on July 18, 1889, a resident of and domiciled in Jefferson County, Kentucky. Prior thereto and on November 5, 1886, he duly executed and published his last will and testament, which with a codicil that is not material to this case, was probated after his death in the Jefferson county court. One parcel of real estate owned by the testator and which he disposed of in his will was situated in the northwest corner of Fourth and Jefferson streets in the city of Louisville, and in disposing of it he employed this language: ''I hereby devise to my executrix and executor, as trustees, the property on the northwest corner of Fourth and Jefferson streets, in Louisville, Kentucky, fronting about 102 feet on Fourth street, and about 140 feet on Jefferson street, now known as the Schurman block and may hereafter be known as the Norton block, . . . which property said trustees and their successors shall hold and collect its rents and profits, until the death of all of my descendants who are now in being, or who may be in being at my death and until all of their children who survive them shall attain twenty-one years of age. Said trustees shall keep the property reasonably insured, and after paying insurance, taxes, repairs, and expenses of the trust, use the net balance as a fund for the support and maintenance of those persons, who, from time to time, during the continuance of the trust, would take the property, if the trust were then to terminate, and in the same proportion, but counting my wife just as if she were one of my children, the interest of each person dying before the trust ends, then to cease. None of said *cestuis que trust* shall at any time anticipate, alien, assign, or encumber any portion of said rents, nor shall the same be liable, in any way, for their debts, and the shares of the married women shall be for their sole and separate use. Said trustees, may, in their discretion, withhold the portion of any of the *cestuis que trust*, and

use it for the support of his or her family, or pay it over
to the wife, or allow it to accumulate, and afterwards
pay such accumulation to such person, or in case of his or
her death before said trustees see fit to pay it to him or
her, then to pay. it to such person or persons as would
be the distributees of him or her. . . . At the termina-
tion of said trust, the property is to vest in the same
persons, and in the same proportions, as it would, if I
were then to die intestate, and the present statute of
descents were then in force.'' The present trustees who
are the successors of the ones created by that language
being convinced that it was highly beneficial to all in-
terested parties, both present and future, that the prop-
erty should be sold and its proceeds reinvested so as to
receive a larger and more certain dividend for the
*cesquis que trust* entered into a written contract with
appellants and defendants below, Consolidated Realty
Company, and C. C. Hieatt, under the terms of which
the latter agreed to purchase the property for the con-
sideration of $690,000.00 with $160,000.00 cash on de-
livery of the deed and the balance by deferred payments
bearing interest from date with a lien upon the prop-
erty. It was also agreed that the sale before becoming
effective should be approved by a court having juris-
diction in proceedings to be instituted for that purpose,
and pursuant thereto the trustees and all of the living
heirs and devisees of the testator as plaintiffs filed this
equity action under the Declaratory Judgment Act
against the purchasers under the contract of sale as de-
fendants. In the petition the facts showing that it would
be to the benefit of all parties concerned for the sale to
be made were alleged, and in brief they were: That the
present building on the lot was erected in 1875 and that
from an architectural standpoint and the absence of
modern conveniences it was largely antiquated, and on
account of its age it needed frequent and costly repairs
so as to enable the trustees to procure tenants at any
price; that on account of such facts and the further one
that other modern buildings had been and were con-
stantly being constructed in the city, it had become ex-
tremely difficult to procure business or office tenants at
all, and that it was absolutely necessary in order to pre-
serve the value of the property and to maintain its site
as a business one that a new modern building should be
constructed, but that plaintiffs did not possess the means
whereby it could be done. It was further alleged that the

property on account of its condition was compelled to pay an excessive insurance rate both on the building and the furnishings of the offices as well as contents of the business rooms; all of which operated as an additional deterrent to prospective tenants; that the tendency of trade and business on Fourth street was southward from Jefferson street, and that unless sufficient improvements were made on the property to render it desirable and attractive to tenants it would sooner or later occupy an abandoned territory and become immensely decreased in value. Many other facts were alleged and all of them were abundantly proven by disinterested witnesses, and upon submission the court by its judgment approved the sale by the trustees and directed that it be carried out according to its terms; but further provided in the judgment that the proceeds should be paid into court and be reinvested under its orders after the payment of costs of the litigation, and from that judgment defendants prosecute this appeal.

The relief herein sought by the petition was provided for by two acts of the legislature enacted at its 1882 session, and may be found on pages 90 and 128 of the published acts for that year. The first section of the act, appearing on page 90 of the acts for that year, was general in its terms and is the same as that which now immediately follows section 491 of Carroll's 1919 edition of the Civil Code, and appearing on pages 404 and 405 of that edition, but the second section confined its operation to the "land and property held in the city of Louisville by Cladius Duvall and wife." The second act appearing on page 128 of the published acts for that year repealed the second section of the first one and left its first section, which, as we have said was general in its terms, in full force and effect and it, so far as we have been able to find, has never been repealed and is still the law of the land. So far as it relates to the question involved in this case it says: "That when lands are held in trust by one person for the life of another, with remainder over to a class of persons, or to any person not ascertained or to be ascertained until the death of the person upon whose life such estate for life is made to depend, or with power on the part of such person for whose life such life estate is held by the trustee, to dispose by a last will and testament, or by an instrument in the nature of a last will and testament, it shall be competent for the circuit courts or courts of like jurisdiction in the county in which such

land or a part thereof is situated, in an action to which all persons having a present or vested interest in such land are parties, to direct the trustee to either sell or mortgage such land; but in all actions it must be averred and proven to the court that such sale or mortgage would be beneficial to all the parties concerned, and facts showing such benefits must be alleged and proven. Any deed or mortgage executed under authority, or in prusuance of any judgment rendered in any such action, shall be held and construed and have the same effect as if executed by every person having a vested or contingent interest in or ownership of such land, and as if executed by all persons and classes who could take under the limitations or provisions of said deed, or as devisees under the exercise of such power to devise or appoint, and as if every claimant, person or future, under such deed or power, was under no disability whatever. The proceeds of the sales authorized by this section shall be paid into court, and shall be reinvested by the court after first having, by appropriate order, provided for the payment of the costs and taxes, if any, in other property to be conveyed and held subject to the same limitations and trusts as the land sold was held.'' Its requirements were literally followed in this case as to allegations, proof and terms of the judgment.

But appellants insist that testator in this case by his will forbade the sale of the property by the trustees or by other person until the time arrived for the termination of the trust he created, and that by subsection 1 of section 492 of the Civil Code, it is provided that ''no sale shall be ordered if forbidden by the deed, will or contract under which the property is held,'' and that it is expressly made applicable ''in the actions mentioned in subsections 3, 4 and 5 of section 489, and in section 491,'' and that inasmuch as the 1882 act is published in the Code as an addenda or an amendment to or part of section 491 the inhibition contained in the first subsection of 492 operated to defeat the jurisdiction of the Jefferson circuit court to render the judgment appealed from. But we are not so convinced by that argument. In the first place the 1882 act did not, either by its title or its terms, purport to amend section 491 of the Civil Code, but only proposed and as is stated in its title to be, ''An act to amend chapter 14, title 10, of the Code of Practice.'' The chapter so proposed to be amended relates (and did so at that

time) to the subject of sales of real property of persons under disability, including future contingent interests the prospective owners of which might not yet be *in esse.* Both sections 491 and 492 of our present Code were enacted prior to the 1882 act and they were each a part of the Code at the time of its enactment. So that, the inhibition contained in subsection 1 of section 492, having been itself enacted prior to that of the 1882 act, could and did only apply to section 491 as it then existed in the same terms as it now appears. Therefore, the inhibition wherein decretal sales were withheld when the deed, will or contract under which the property was held forbade it, applied only to sales under section 491 as it then existed, and could not and did not apply to sales (even judicial) under different circumstances therafter provided for. The conclusion then is inevitable, that the inhibition contained in subsection 1 of section 492 has no application to the remedy given by the 1882 act, even if it related to *decretal* or judicial sales as does the inhibition in section 492, but which is untrue, since the only. character of sales therein dealt with are *inter partes* sales, and which the act provides shall be approved (not decreed) by the court in its judgment. However, the 1882 act nowhere provided that it should be a prerequisite to the court giving its *approval* to such an *inter partes* sale by the trustees or other parties having the right to make it that there should be no forbidding of the sale in the instrument creating the trust estate. Its terms are broad and sweeping and sufficient to authorize the relief therein granted, even though the instrument creating the estate contained restrictions against the alienation of the property, and we conclude that it was the purpose of the legislature to make provisions for sale in just such cases; for if the instrument creating the trust did not forbid the sale, or required (expressly or by necessary implication) that if made it should receive the approval of the court, then in either of those events the statute was futile and wholly unnecessary because the authority to sell would then be contained in the creating instrument, and unless it applies to cases where the sale is forbidden there was no purpose in enacting it and the legislature was guilty of a vain thing in doing so. Such a construction should not be adopted if it can be avoided.

The will in this case was executed and the testator died *after* the effective date of the 1882 act and he was

compelled to and did exercise his right to make his will in the light of the provisions of that act, and when it said (as we have seen it did) that the remedy therein provided for should exist, regardless of whether the sale was forbidden in the instrument creating the trust estate, it was incompetent for him to annul, amend, modify or in any wise qualify the broad terms of the remedy by a provision in his will, since his right to make a will at all is of statutory creation and is always subject to be regulated by statute.

We therefore, conclude that if Mr. Norton's will in this case could be construed as containing an absolute inhibition of a sale of the property in question, then it should and must surrender to the statute in existence at the time he made it, and the provisions of which, as we have seen, gave the remedy herein adopted, notwithstanding such restriction on the part of the creator of the trust. Moreover, we again repeat, subsection 1 of section 492 deals with and applies to only decretal sales by the court and it is extremely doubtful if it could be invoked to defeat the remedy provided for in the 1882 act, which does not relate to such sales, but only to the court's *approval* of *inter partes* ones, and it might be well argued that it was competent for the legislature to make different provisions for the one than for the other.

But, independently of any of the foregoing, and treating the case as if the sale herein could not be made by the parties or approved by the court if Mr. Norton's will forbade it, we are then convinced that under our prior opinions, with the applications of the rules therein announced, the court was authorized to find that he did not do so, and the sale by the trustees under the facts alleged and proven was properly approved by the judgment appealed from. Latta v. Louisville Trust Co., &c., 198 Ky. 45; Gillispie v. Winston's Trustee, 170 Ky. 667; Marshall v. Anderson's Trustee, 156 Ky. 117; Sparrow v. Sparrow, 171 Ky. 101; Luttrel v. Wells, 97 Ky. 84; Lindemeier v. Lindemeier, 91 Ky. 264; Warfield v. English, 11 K. L. R. 263, and other cases referred to in those opinions. The substance of our ruling in those opinions is, that restraints on alienation while tolerated to a limited extent are not favored in the law, and that the language creating them will be given a strict construction, and, unless it is *clearly* made to appear by such a construction that the restraint was intended to be

and was provided for in the instrument its existence will not be adjudged, nor the supposed restraint upheld.

We will not attempt in this opinion an analysis of those in the cases referred to, but will content ourselves by directing the reader to them. It is sufficient to say that in at least some of them the language relied on to create the alleged restraint was much more direct and certain than that found in Mr. Norton's will. At the same time it was susceptible of a ddifferent interpretation and because of that fact, and in the light of the strict rules of interpretation, *supra*, it was held that no prohibition against a sale was contained in the instruments involved in those cases. Here the trustees were given power in a farmer part of the will "to sell and convey any or all of the lands and lots owned by me . . . except as herein provided." The provision with reference to the property involved here was that the trustees should hold the trust property during the lives of the testator's children and until the youngest child or any of them arrived at 21 years of age, when the trust should cease and the title to the property become absolutely vested in the ones' entitled to it at that time. There was no specific inhibition against a sale of the property but only that the corpus of the trust should be administered under the trust until that time and that it should not terminate until then.

The wisdom of our former interpretation in cases of this kind, as well as that of the 1882 act, is well illustrated in this case. We, in adopting those rules, and the legislature in enacting that act, each realized that many testators and makers of deeds frequently attempted to eliminate from the market and to withhold from commercial traffic the real estate which was the subject matter of the trusts they created by placing long restraints upon its alienation to the detriment in a majority of the instances of the beneficiaries under the trust, and also to the hampering of the progress of the community in which the property was situated. To prevent such consequences the strict rules adopted by us were put in force, and no doubt for the same reason the legislature, as it had the authority to do, enacted the 1882 act giving the right of the trustees to sell the trust property with the approval of the court and on the conditions therein provided, notwithstanding a sale was prohibited by the instrument creating the trust, since such prohibition would be invalid as in conflict with the terms of the statute and which

would undoubtedly apply to a trust created after the effective date of the 1882 statute, as was true in this case.

The judgment being in accord with the views herein expressed is affirmed.