## Headley et al. v. Headley et al.

(Decided November 27, 1928.)

### Appeal from Fayette Circuit Court.

1. Trusts.—The supervision of administration of trusts is a well-recognized ground of equity jurisdiction, and to this end court of equity may direct trustee to do those things which are necessary for proper preservation of trust.

2. Trusts.—Where land devised in trust, at time of execution of will, was only adapted for grazing purposes, but has become practically urban property, has increased in value, and is worth about $350 an acre, and trustee has not the means to so improve it as to make it saleable as urban property, held that, under Civil Code of Practice, sec. 491, court of equity had power to direct trustee to sell land to the beneficiaries, who were willing to pay $400 an acre, resulting in much larger income being obtained from the trust estate.

3. Remainders.—Infant remandermen of trust estate are wards of chancellor, whose duty it is to protect their interests from any error of judgment on part of life tenant, or possible bias, where he is purchaser of trust estate.

J. J. BRADLEY and B. L. KESSINGER for appellants.

HUNT, NORTHCUTT & BUSH for appellees.

OPINION OF THE COURT BY COMMISSIONER HOBSON—
Affirming.

H. P. Headley died testate, leaving surviving him
two sons, George W. Headley and Hal Price Headley,
and one daughter, Alma Headley De Waal. By his will
he devised all of his estate to the trustees of his respec-
tive children, making Hal Price Headley the trustee for
George W. Headley, George W. Headley the trustee for
Hal Price Headly, and making them both the trustees of
the daughter, Alma Headley De Waal. He devised his
La Belle farm to the trustee for George W. Headley. He
devised part of his Beaumont farm to the trustee for Hal
Price Headley, and the remainder of this farm, which
contained 872 acres, to the trustees for Mrs. De Waal.
The will provided that the land devised to the trustee for
each of the testator's children should be held by the trus-
tee during the life of such child, and after his or her
death during the life of his or her children. No bond was
required of the trustees. The two sons were made execu-
tors of the will, without bond. It was also provided that
either of the brothers could by will dispose of the land
devised to him. The will then provided as follows:

"I direct that the real property above men-
tioned and which has been devised to my son, Hal
Price Headley, in trust for the benefit of my son,
George W. Headley, may be sold and conveyed by
the trustee, and the proceeds of said sale be rein-
vested in other real estate, which shall be held and
used under the same conditions and limitations as
set out in this will, but said real estate shall not be
sold and conveyed unless my son, George W. Head-
ley, shall have signified his consent to such sale and
reinvestments by uniting in the deed conveying the
property.

"Also the real property devised to my two sons,
George W. Headley and Hal Price Headley, or the
survivor, in trust for my daughter, Alma Headley
De Waal, may be sold and conveyed and the pro-
ceeds reinvested in other real estate, but said sale
and conveyance shall not be made unless my daugh-
ter, Alma Headley De Waal, shall signify her con-
sent by uniting in the deed conveying the property,
and when the proceeds of said sale shall have been
reinvested in other real estate, it shall be held sup-

ject to the same conditions and limitations as the real property disposed of.

"I also direct that the real property which has been devised to my son, George W. Headley, in trust for the benefit of my son, Hal Price Headley, may be sold and conveyed by the trustee, and the proceeds of said sale be reinvested in other real estate, to be held under the same conditions and limitations as set out in this will, but said sale and reinvestment shall not be made unless my son, Hal Price Headley, shall have signified his consent by uniting in the deed conveying the property.

"I want it also understood that if it should become necessary or expedient in the opinion of the said trustees to sell any of the real estate devised and bequeathed in this instrument for the purpose of reinvestment, said sale or sales, shall be made only with the consent of the beneficiary, as hereinbefore set out, and the purchaser or purchasers shall not be required to look to the reinvestment of the proceeds of any of said sales, but the trustees shall be liable therefore."

The will was written in 1918, The testator died in 1921. After the writing of the will the testator conveyed the Beaumont farm to Hal Price Headley in consideration of $187,000, and the conveyance to him by Hal Price Headley of a tract of 132 acres of land. After his death, in a suit brought for the construction of the will, it was adjudged that the 132 acres passed under the will equally to the trustee for Hal Price Headley and the trustees of Mrs. De Waal, and should be equally divided between them. The land at the testator's death had no building on it, except an old distillery house, and was used for grazing purposes. It lies only a fourth of a mile beyond the corporate limits of Lexington, and as the city has grown and the demand for lots has increased this land has become more valuable for urban purposes. It was valued then at $250 an acre, and is valued now at $350 an acre. The net profits from the rent of the land for grazing purposes only brings an income of about 2 per cent. on the present value. The land cannot be used for urban purposes, unless a large sum of money is spent in streets, a sewer system, and for water and light. The trustees doubt their power to make any such expendi-

ture, and are unwilling to take the risk of spending so
large a sum of money upon an uncertainty. On the other
hand, the two children of the testator are willing to take
this risk, and proposed to buy the land from the trustees
at $400 an acre. Thereupon this proceeding was insti-
tuted, to obtain the judgment of the court whether the
conveyance of the land should be made by the trustees
to Hal Price Headley and Mrs. De Waal equally, for the
consideration of $400 an acre. The circuit court directed
the trustee to make the conveyance; the proceeds of the
sale to be held by the trustees under the will on the same
terms as the trustees held the land. The guardian ad
litem for the infant children prosecutes an appeal for
them from this judgment. Section 491 of the Civil Code
provides:

"That when lands are held in trust by one per-
son for the life of another, with remainder over to a
class of persons, or to any person not ascertained or
to be ascertained until the death of the person upon
whose life such estate for life is made to depend, or
with power on the part of such person for whose life
such life estate is held by the trustee, to dispose by
a last will and testament, or by an instrument in the
nature of a last will and testament, it shall be com-
petent for the circuit courts or courts of like juris-
diction in the county in which such land or part
thereof is situated, in an action to which all persons
having a present or vested interest in such land or
parties, to direct the trustee to either sell or mort-
gage such land; but in all actions it must be averred
and proven to the court that such sale or mortgage
would be beneficial to all the parties concerned, and
facts showing such benefits must be alleged and
proven. Any deed or mortgage executed under
authority, or in pursuance of any judgment rendered
in any such action, shall be held and construed and
have the same effect as if executed by every person
having a vested or contingent interest in or owner-
ship of such land, and as if executed by all persons
and classes who could take under the limitations or
provisions of said deed, or as devisees under the
exercise of such power to devise or appoint, and as
if every claimant, present or future, under such
deed or power, was under no disability whatever.
The proceeds of the sales authorized by this section

shall be paid into court, and shall be reinvested by the court after first having, by appropriate order, provided for the payment of the costs and taxes, if any, in other property to be conveyed and held subject to the same limitations and trusts as the land sold was held.''

Appellants insist that the trustee has no power under the will to sell or convey the land without the concurrence of the life tenant; that the life tenant in this respect occupies a fiduciary relation to the remainderman, and cannot consent to a sale to himself, for his interest then would be adverse to the remainderman; that he would look to his own interests, and not those of the remainderman, and so get the property at a low price.

The supervision of the administration of trusts is a well-recognized ground of equity jurisdiction. To this end a court of equity may direct the trustee to do those things which are necessary for the proper preservation of the trust. While the life tenant in a case like this might be induced, by motives of interest, to consent to a sale which was not to the interest of the remainderman, where the life tenant is the purchaser of the property, the chancellor holds the scales under the statute and may direct that to be done, which under all the facts and circumstances is best for the preservation of the trust. In this case it is clearly alleged and shown that the sale of the property, on the terms indicated, will be beneficial to all the parties concerned. The land is worth only about $350, but is sold for $400, an acre. It is only bringing now an income of about 2 per cent.; and a much larger income can be obtained on the price of $400 an acre. Conditions have changed since the decedent wrote his will. Land that then was only adapted for grazing purposes has now become practically urban property, and the trustee has not the means to so improve it as to make it salable as urban property. The statute was clearly intended to confer upon courts of equity power in such cases to direct the trustee to make a sale, where the interest of the trusts so requires, and where this power without the intervention of the court of equity was not vested in the trustee. The infants are the wards of the chancellor. It is his duty always to protect their interest, and, though the life tenant may be interested in having this sale made, the chancellor sits as the arbiter,

and protects the interest of the infants from any error of judgment on the part of the life tenant, or possible bias, where he is the purchaser. Consolidated Realty Co. v. Norton, 214 Ky. 586, 283 S. W. 969.

The judgment of the court does not expressly direct the price of the land to be paid into court, or to be reinvested under the order of the court; but, as the sale has not been made, the judgment should be extended, so as to direct this, on the return of the case to the circuit court. The court in its discretion may appoint the trustee as special receiver to collect and reinvest this money under its order.

Judgment affirmed.