## Malone's Guardian Ad Litem v. Malone et al.

(Decided June 22, 1934.)

C. L. DALY for appellant.

COLLINS & COLLINS for appellee Mrs. Catherine Malone.

BROWNING, REED & ZEIGLER for other appellees.

OPINION OF THE COURT BY JUDGE RICHARDSON—Affirming.

Thomas Malone, a resident of Mason county, Ky., died testate, leaving surviving him Catherine Malone, as his widow, and three children, Thomas M. Malone, Jr., John Maurice Malone, and Anna Alma Malone, all of whom were over 21 years of age. John Maurice and Anna Alma were not married and lived with their mother; Thomas M. Malone, Jr., was married and lived at his own home.

At his death, Thos. Malone owned over 900 acres of land situated in Mason county, which was incumbered by a mortgage in excess of $80,000 to the Bank of Maysville.

After directing the payment of his debts and funeral expenses, he devised his real and personal property to his wife, the personal property to be hers absolutely, and the real estate to be hers during her natural life to use and have the income therefrom, with the power in her as executrix to sell and convey the real estate for the payment of his debts or for reinvestment as she deemed best and proper, with the provision that, if the proceeds of any of his real estate which she might sell that was not necessary or not used in the payment of his debts be reinvested in other real estate of her own selection to be held by her "in the same manner and have the income therefrom during her life." By the third clause of his will he devised his real estate at her death to his three children "share and share alike," but, should either of the children die leaving descendants, "then the descendants shall take the share that such

child would have taken if living.'' Catherine Malone was nominated executrix of the will, and upon its probation she duly qualified.

In addition to the debt to the Bank of Maysville he was indebted to others several thousand dollars; consequently his estate was insolvent.

In March, 1931, the executrix and the sons and daughter of the testator, with the Bank of Maysville, began negotiations with the hope of being able to dispose of Malone's land for an amount sufficient to pay his debts.

John Maurice Malone was, at the time, sui juris and unmarried, and practically assumed the responsibility of the head of the family. With the consent of his mother, brother, and sister, he took charge of his father's affairs and engaged in active negotiations to sell his father's land in the endeavor to pay the debts of his father.

The result of the negotiations was a contract between the executrix and the Bank of Maysville whereby the bank agreed to purchase certain acreage of the land owned by the testator at the price of $40,000 to be credited on the $80,000 and interest, owing it by the testator at the time of his death. The remainder of his real estate was to be taken individually by Mrs. Malone for the remainder of the bank's debt. The contract provided that the executrix should offer the land at public sale, after due advertisement, and, should the acreage the bank agreed to take bring more than the price that was to be paid for it by the bank, the excess credited on its mortgage debt. The property was put on sale in accordance with the terms of the contract. Various parcels were offered for sale, and the price realized for the acreage the bank agreed to take was less than $39,000, but no offer at any price was obtained for the land which Mrs. Malone individually agreed to take and pay therefor the remainder of the bank's debt. John Maurice Malone took the leading active part in forming the plan and making the arrangements whereby the bank was to take part of the property and Mrs. Malone the remainder in order to pay the entire mortgage debt of the bank; but, about the time the negotiations were ready to be closed, he became mentally incompetent, was adjudged so by the Mason circuit court on April 8, 1931, and he has since been confined in the Eastern State Hospital at Lexington, Ky., a hopelessly incurable lunatic.

It is superfluous to say that the testator's land was legally bound for his debts, and Catherine Malone was under the duties of executrix with power to sell the land and liquidate the debts; therefore ,unless justified by the unusual and peculiar facts herein, could not become the purchaser of any portion of the testator's real estate. To help the situation and relieve her as far as possible of her liability from, herself becoming the purchaser of the testator's real estate, Thos. M. Malone, Jr., and wife, and Anna Alma Malone, a single woman, executed and delivered a deed, conveying to Catherine Malone their interest in the real estate of the testator in consideration of her paying the debts of the testator. In order to prevent foreclosure by the bank of its mortgage on the remainder of the real estate of the testator, as executrix of the will of Thos. Malone, as his widow and individually, Catherine Malone executed and delivered a deed to J. M. Collins, trustee, conveying to him that portion of the testator's real estate which she was to take under the contract with the Bank of Maysville. This plan was solely designed and executed in order to dispose of this portion of the real estate of the testator for the liquidation of the balance of the bank's debt. J. M. Collins, as trustee, in turn conveyed the land to her individually and for and in consideration of her paying the balance of the $34,624.20 due the Bank of Maysville, she having theretofore paid of her own funds $10,624.20 of the debt of the bank. After the delivery of the Collins deed to her, she paid the bank with her own funds $15,000 of the $34,624.20, leaving $20,-000 of the bank's debt unpaid. She borrowed this sum of the bank on her individual obligation to it, which was in effect a continuation of that much of the original mortgage debt.

In 1932 she made application to the Federal Land Bank of Louisville, Ky., for a loan to take up this $20,-000. The Federal.Land Bank refused to accept the title.

This action was brought to validate her deed to Collins and his deed to her and to quiet her title to the land. A decree was entered declaring she was vested with a complete title in fee simple to the land conveyed by her as executrix to Collins, trustee, and by him as trustee to her individually. The guardian ad litem of John Maurice Malone appeals, and the executrix is here insisting on an affirmance of the judgment.

It is an accepted rule a trustee having power to sell

the trust or devised property cannot buy it from himself unless the cestui que is sui juris and it clearly appears from the evidence that the trustee acted in good faith, that the consideration was adequate, and that the cestui que trust consented to the sale with full knowledge of all material facts, and consciously and intentionally acted upon his independent thought, uninfluenced by any fact either stated or withheld by the trustee, and, unless such facts appear, the purchase by the trustee is always subject to be avoided by the cestui que trust and this is so in every case where the latter is not sui juris. The cestui que trust may thereafter either treat the property in the hands of the trustee as still being held by him in trust or, if he has sold it, to adopt the sale and seek an accounting from the trustee of the profits which he realized from his sale of the property after he had purchased it.

In Clay v. Thomas, 178 Ky. 199, 198 S. W. 762, 764, 1 A. L. R. 728, when considering the right of a trustee to purchase trust property from himself as trustee, we said:

"Generally speaking, unless modified by some peculiar facts, a trustee cannot purchase from himself the trust property free from the right of the cestui que trust to either treat his purchase as a continuation of the trust or to adopt the subsequent disposition of the property by the trustee and to ask for an accounting of the profits realized by the trustee. This general rule is of ancient origin, and is recognized by all courts with perhaps as much unanimity as any other principle of law."

After citing and discussing numerous authorities, we used this language:

"In some cases, as will be found from the authorities, supra, a trustee, especially if he be one not vested with the power of sale may be empowered by a court of equity to become a bidder at the sale of the trust property. But we think that practically without exception the exercise of such authority by the court is always confined to cases where the trust property is sold at public sale, where the bidding is competitive, and where the court rightfully has jurisdiction of the persons of both the trustees and cestui que trust, as well as of the rem in a proceeding justifiably brought for the purpose of securing

the aid or procuring the advice of the court in carrying out the trust. But where the property is not already in custodia legis in the character of proceeding just described, and where the trustee has full and complete authority from the creator of the trust to sell, we have been unable to find any authority for a court of equity in proceeding brought for that purpose only to remove by its judgment the disabilities of the trustee, so as to enable him to legally purchase the trust property from himself as trustee, nor have we been able to find any authority in the character of case just described whereby a court of equity in a proceeding brought for that purpose might approve of a private sale of the property by the trustee to himself, so as to make it effectual and binding against the cestui que trust.''

The foundation of this equitable principle is that a trustee or executor will not be permitted to create in himself an interest antagonistic to that of the party for whom he acts, nor to traffic in the estate for his own emolument. Faucett v. Faucett, 1 Bush, 511, 89 Am. Dec. 639; Bailey et al. v. Waddy et al., 195 Ky. 415, 243 S. W. 21. It seems that one exception to this equitable rule is where the facts in the case undoubtedly show the transaction created no conflicting opposite interests in the trustee to that of the cestui que trust, nor trafficking by the trustee in the estate for his own emolument, and the parties were all sui juris, related, and all thoroughly familiar with all the facts and circumstances, and no misstatement was made and no fact withheld, and they are all trying to reach a result favorable to the cestui que trust, and such a result was actually reached. Bailey et al. v. Waddy et al., supra.

In Clay v. Thomas, supra, this court recognized the rule that a trustee will not be permitted to purchase the trust property for himself was subject to a modification when there were ''some peculiar facts.'' The exceptions to the general rule are consonant with the prevailing principle that ''the supervision of the administration of trusts is a well-recognized ground of equity jurisdiction. To this end a court of equity may direct the trustee to do those things which are necessary for the proper preservation of the trust.'' Headley et al. v. Headley et al., 226 Ky. 483, 11 S. W. (2d) 123, 124; Owen et al., v. Burks, 151 Ky. 162, 151 S. W. 369.

Infants and persons non compos mentis are wards

of the chancellor whose duty it is to protect their interest even where either the life tenant or trustee is the purchaser of the trust estate; the chancellor in such transaction holds the scales of intrinsic equity and may direct that to be done which under all the facts and circumstances is best for the preservation of the trust. Headley et al. v. Headley et al., supra.

In the pending case, negotiations which finally resulted in the contract between the bank and the executrix were inaugurated and carried on up to the point of near completion by John Maurice Malone, who suddenly lost his mind. It was to his and the estate's interest to have the plan which he originated consummated by the bank taking a certain acreage of his father's land and his mother the remainder, which was at the time under a mortgage to secure the bank's debt of $80,000. The purpose of the plan was to satisfy the bank's mortgage debt by applying the value of the land to the payment of the debt. The rights of the widow and the devisees in the land, under the will of Thos. Malone, was subject to the mortgage of the bank, and the debt secured by the mortgage could be paid in no other way than a foreclosure sale of the land or by the plan adopted by the executrix and the application thereto of the proceeds. The plan inaugurated by John Maurice Malone and carried out by the executrix after the former became insane was fair and reasonable and solely for the benefit of the estate and largely at her personal sacrifices. The fact the land was advertised and offered for sale at public outcry when that portion of it which the bank agreed to buy failed to bring the amount it agreed to credit therefor on the $80,000, and that no offer at the public sale was made for that portion which the executrix was to take under the agreement with the bank, fully sustains the statement that the plan resorted to by the executrix for the purpose of satisfying the bank's debt was fair and reasonable. The executrix has not trafficked in the estate for her own emolument nor has she designedly acquired an interest opposite the devisees, including John Maurice Malone. She has merely perfected his own plan, formulated by him when of sound mind. The unusual and peculiar facts herein and the necessities of equity clearly take this case out of the general rule that a trustee cannot buy from himself the trust property, recognized by this court in Clay v. Thomas, supra, and other cases.

The judgment of the chancellor being in harmony with out views, it is affirmed.